DAVID H. CLARK, Appellant, *v.* JOHN L. DODGE et al., Respondents.

(Argued December 12, 1935; decided January 8, 1936.)

*James M. Gray* and *Mortimer B. Patterson* for appellant. On this motion for judgment on the pleadings, the only facts considered are those stated in the complaint and reply and in the answer favorable to plaintiff. (*Harmon* v. *Peats Co.*, 243 N. Y. 473; *Continental Securities Co.* v. *Belmont*, 75 Misc. Rep. 234; 150 App. Div. 298; 206 N. Y. 7; *Garfunkel* v. *Malcolmson*, 217 App. Div. 632; *Lloyd* v. *R. S. M. Corp.*, 251 N. Y. 318.)   On this motion plaintiff is entitled to " the most favorable inferences which may be drawn from the complaint." (*Blum* v. *Whitney*, 185 N. Y. 232; *Clark* v. *West*, 193 N. Y. 349.)   The contract was personal between two stockholders owning all the stock of the corporation. Its dominant feature as to the corporation was that the majority stockholder would so use his control to the end that the minority stockholder would receive his just proportion of the income.   The agreement to vote so as to keep plaintiff in office as manager was only so long as he was " faithful, efficient and competent." (*Breslin* v. *Friesbreslin Co.*, 70 N. J. L. 274; *Wood Co.* v. *American Co.*, 62 Atl. Rep. 768; *Lorillard* v. *Clyde*, 86 N. Y. 384; *Manson* v. *Curtis*, 223 N. Y. 313; *Drucklieb* v. *Harris, Inc.*, 209 N. Y. 211; *Kantzler* v. *Bensinger*, 214 Ill. 589; *Fitzgerald* v. *Christy*, 242 Ill. App. 343; *Venner* v. *Chicago City Ry. Co.*, 258 Ill. 523; *Kassell* v. *Empire Tinware Co.*, 178 App. Div. 176; *King* v. *Barnes*, 109 N. Y. 267; *Raymond* v. *Colton*,

104 Fed. Rep. 219; *Doan* v. *Rogan*, 79 Ohio St. 372.) The contract to vote stock to keep plaintiff in office as a director was valid; and the individual defendant's affirmative breach of it gives a cause of action against him. (*McQuade* v. *Stoneham*, 263 N. Y. 323; *Manson* v. *Curtis*, 223 N. Y. 313.)

*Arthur L. Barton* and *John S. Sickels* for respondents. The contract is illegal and void in that its performance contemplates and necessitates the relegation of the corporate boards of directors to the status of dummies and in that the enforcement of its provisions as demanded by plaintiff would require the court to ignore and continue to ignore and displace the boards of directors, substituting itself therefor. (*McQuade* v. *Stoneham*, 263 N. Y. 323; *Manson* v. *Curtis*, 223 N. Y. 313; *Fells* v. *Katz*, 256 N. Y. 67; *Jackson* v. *Hooper*, 76 N. J. Eq. 592; *Hellier* v. *Alhorn*, 255 Mass. 273; *Seitz* v. *Michel*, 148 Minn. 80; *Lothrop* v. *Goudeau*, 142 La. 342; *Dejonge* v. *Zentgraf*, 182 App. Div. 43; *Hastings* v. *International Paper Co.*, 187 App. Div. 404; *Thomas* v. *Matthews*, 94 Ohio St. 32; *Dubbs* v. *Kramer*, 302 Penn. St. 455; *Haldeman* v. *Haldeman*, 176 Ky. 635; *Walker* v. *Man*, 142 Misc. Rep. 277; *Drucklieb* v. *Harris, Inc.*, 209 N. Y. 211; *Cuppy* v. *Ward*, 187 App. Div. 625; 227 N. Y. 603.)

CROUCH, J. The action is for the specific performance of a contract between the plaintiff Clark and the defendant Dodge, relating to the affairs of the two defendant corporations. To the complaint a joint answer by the three defendants was interposed, consisting of denials and a separate defense and counterclaim. To the separate defense and counterclaim a reply was made. The defendant then moved under rule 112 of the Rules of Civil Practice, and under sections 476, 96 and 279 of the Civil Practice Act, to dismiss the complaint. The motion was made " on the pleadings in this action and the admissions of the plaintiff " in two affidavits submitted

by him on a prior motion in the action. The alleged admissions are equivocal at best, and clearly were not " intended to be treated as a part of a pleading or made to avoid some question arising on the pleadings." (*Lloyd* v. *R. S. M. Corporation*, 251 N. Y. 318, 320.) We shall deal, therefore, with the questions here presented in the light of the facts most favorable to plaintiff appearing in the pleadings only.

Those facts, briefly stated, are as follows: The two corporate defendants are New Jersey corporations manufacturing medicinal preparations by secret formulæ. The main office, factory and assets of both corporations are located in the State of New York. In 1921, and at all times since, Clark owned twenty-five per cent and Dodge seventy-five per cent of the stock of each corporation. Dodge took no active part in the business, although he was a director and, through ownership of their qualifying shares, controlled the other directors of both corporations. He was the president of Bell & Company, Inc., and nominally general manager of Hollings-Smith Company, Inc. The plaintiff Clark was a director and held the offices of treasurer and general manager of Bell & Company, Inc., and also had charge of the major portion of the business of Hollings-Smith Company, Inc. The formulæ and methods of manufacture of the medicinal preparations were known to him alone. Under date of February 15, 1921, Dodge and Clark, the sole owners of the stock of both corporations, entered into a written agreement under seal, which after reciting the stock ownership of both parties, the desire of Dodge that Clark should continue in the efficient management and control of the business of Bell & Company, Inc., so long as he should " remain faithful, efficient and competent to so manage and control the said business;" and his further desire that Clark should not be the sole custodian of a specified formula but should share his knowledge thereof and of the method of manufacture with a son of Dodge, provided,

in substance, as follows: That Dodge during his lifetime and, after his death, a trustee to be appointed by his will, would so vote his stock and so vote as a director that the plaintiff (a) should continue to be a director of Bell & Company, Inc. and (b) should continue as its general manager so long as he should be " faithful, efficient and competent;" (c) should during his life receive one-fourth of the net income of the corporations either by way of salary or dividends; and (d) that no unreasonable or incommensurate salaries should be paid to other officers or agents which would so reduce the net income as materially to affect Clark's profits. Clark on his part agreed to disclose the specified formula to the son and to instruct him in the details and methods of manufacture; and further, at the end of his life to bequeath his stock — if no issue survived him — to the wife and children of Dodge.

It was further provided that the provisions in regard to the division of net profits and the regulation of salaries should also apply to the Hollings-Smith Company.

The complaint alleges due performance of the contract by Clark and breach thereof by Dodge in that he has failed to use his stock control to continue Clark as a director and as general manager, and has prevented Clark from receiving his proportion of the income, while taking his own, by causing the employment of incompetent persons at excessive salaries, and otherwise.

The relief sought is reinstatement as director and general manager and an accounting by Dodge and by the corporations for waste and for the proportion of net income due plaintiff, with an injunction against further violations.

The only question which need be discussed is whether the contract is illegal as against public policy within the decision in *McQuade* v. *Stoneham* (263 N. Y. 323), upon the authority of which the complaint was dismissed by the Appellate Division.

" The business of a corporation shall be managed by its

board of directors." (General Corporation Law [Cons. Laws, ch. 23], § 27.) That is the statutory norm. Are we committed by the *McQuade* case to the doctrine that there may be no variation, however slight or innocuous, from that norm, where salaries or policies or the retention of individuals in office are concerned? There is ample authority supporting that doctrine (*e. g., West* v. *Camden,* 135 U. S. 507; *Jackson* v. *Hooper,* 76 N. J. Eq. 592). But cf. *Salomon* v. *Salomon & Co.* ([1897] A. C. 22, 44), and something may be said for it, since it furnishes a simple, if arbitrary, test. Apart from its practical administrative convenience, the reasons upon which it is said to rest are more or less nebulous. Public policy, the intention of the Legislature, detriment to the corporation, are phrases which in this connection mean little. Possible harm to *bona fide* purchasers of stock or to creditors or to stockholding minorities have more substance; but such harms are absent in many instances. If the enforcement of a particular contract damages nobody — not even, in any perceptible degree, the public — one sees no reason for holding it illegal, even though it impinges slightly upon the broad provision of section 27. Damage suffered or threatened is a logical and practical test, and has come to be the one generally adopted by the courts. (See 28 Columbia Law Review, 366, 372.) Where the directors are the sole stockholders, there seems to be no objection to enforcing an agreement among them to vote for certain people as officers. There is no direct decision to that effect in this court, yet there are strong indications that such a rule has long been recognized. The opinion in *Manson* v. *Curtis* (223 N. Y. 313, 325) closed its discussion by saying: " The rule that all the stockholders by their universal consent may do as they choose with the corporate concerns and assets, provided the interests of creditors are not affected, because they are the complete owners of the corporation, cannot be invoked here." That was because all the stockholders were not parties to the agree-

416

ment there in question. So, where the public was not affected, " the parties in interest, might, by their original agreement of incorporation, limit their respective rights and powers," even where there was a conflicting statutory standard. (*Ripin* v. *U. S. Woven Label Co.*, 205 N. Y. 442, 448.) " Such corporations were little more (though not quite the same as) than chartered partnerships." (Id. p. 447.) In *Lorillard* v. *Clyde* (86 N. Y. 384) and again in *Drucklieb* v. *Harris* (209 N. Y. 211), where the questioned agreements were entered into by all the stockholders of small corporations about to be organized, the fact that the agreements conflicted to some extent with the statutory duty of the directors to manage the corporate affairs was thought not to render the agreements illegal as against public policy, though it was said they might not be binding upon the directors of the corporation when organized. (Cf. LEHMAN, J., dissenting opinion in the *McQuade* case.) The rule recognized in *Manson* v. *Curtis*, and quoted above, was thus stated by BLACKMAR, J., in *Kassel* v. *Empire Tinware Co.* (178 App. Div. 176, 180): " As the parties to the action are the complete owners of the corporation, there is no reason why the exercise of the power and discretion of the directors cannot be controlled by valid agreement between themselves, provided that the interests of creditors are not affected."

*Fells* v. *Katz* (256 N. Y. 67), where all the stockholders were parties to the agreement, is no authority to the contrary. The decision there merely construed the agreement and found that plaintiff had breached it, thereby justifying his removal. " The agreement of the stockholders to continue a man in the directorate must be construed as an obligation to retain him only so long as he keeps the agreement on his part faithfully to act as a trustee for the stockholders " (p. 72). Indeed, the case may be regarded as applying the test of damage above referred to. Any other construction would have caused damage to the corporation and its stockholders and would have been illegal.

Except for the broad dicta in the *McQuade* opinion, we think there can be no doubt that the agreement here in question was legal and that the complaint states a cause of action. There was no attempt to sterilize the board of directors, as in the *Manson* and *McQuade* cases. The only restrictions on Dodge were (a) that as a stockholder he should vote for Clark as a director — a perfectly legal contract; (b) that as director he should continue Clark as general manager, so long as he proved faithful, efficient and competent — an agreement which could harm nobody; (c) that Clark should always receive as salary or dividends one-fourth of the " net income." For the purposes of this motion, it is only just to construe that phrase as meaning whatever was left for distribution after the directors had in good faith set aside whatever they deemed wise; (d) that no salaries to other officers should be paid, unreasonable in amount or incommensurate with services rendered — a beneficial and not a harmful agreement.

If there was any invasion of the powers of the directorate under that agreement, it is so slight as to be negligible; and certainly there is no damage suffered by or threatened to anybody. The broad statements in the *McQuade* opinion, applicable to the facts there, should be confined to those facts.

The judgment of the Appellate Division should be reversed and the order of the Special Term affirmed, with costs in this court and in the Appellate Division.

CRANE, Ch. J., LEHMAN, O'BRIEN, HUBBS, LOUGHRAN and FINCH, JJ., concur.

Judgment accordingly.