Charles Margett, J.
Plaintiffs, Harold Fromkin and Travelers Hotel, Inc. (hereinafter referred to as Travelers), brought this action to enjoin the sale of certain real property by defendant Merrall Realty, Inc. (hereinafter referred to as Merrall), to defendant Land & Building Investors, Inc., pursuant to a contract of sale dated November 23, 1959; to adjudge this contract void and unenforeible; to specifically enforce certain oral agreements affecting the use and disposition of the real property involved and to impose a restriction thereon to the extent that it shall not be used for hotel or motel purposes.
Merrall has interposed three counterclaims for damages, all predicated on the claim that this action was maliciously instituted to prevent the consummation of its contract to sell the property to Land & Building Investors, Inc. The latter has counterclaimed against both plaintiffs and cross-claimed against defendants Merrall and Samuel Schwartz, its president, for judgment declaring the contract of sale dated November 23,1959 to be valid and for damages.
On May 1, 1955 plaintiff Travelers was organized under the laws of the State of New York as R & F Realty Corporation, which name was subsequently changed to Travelers Hotel, Inc. It owns and operates the hotel known as the Travelers Hotel at 94-00 Ditmars Boulevard, County of Queens, near the entrance to La Guardia Airport.
From the time of incorporation until December, 1955, plaintiff Fromkin owned all of Travelers’ 100 outstanding shares of capital stock. On or about December 15, 1955, defendant Schwartz purchased a 10% interest in the corporation for $40,000 and the defendant Reuben Ades (Schwartz’ brother-in- *290 .law) a 5% interest for $25,000. At the present time, Fromkin owns 85, Schwartz 10 and Ades 5 shares of the issued capital stock of Travelers. Since March, 1956, Fromkin, Schwartz and one Edith Fromkin have been the sole officers of this corporation to wit, president, vice-president and secretary-treasurer, respectively.
Prior to March 8, 1956 Schwartz became interested in 61 lots of which 55 were located in the block adjoining that in which Travelers Hotel was then in the process of construction. The remainder were two blocks away. In March, 1956 Fromkin, Schwartz and Ades agreed that all 61 lots would be purchased by and in the name of Fromkin, who would assign the contract to a corporation to be known as Merrall Realty, Inc., whose capital stock would be issued to them in the following proportions: 40% each to Fromkin and Schwartz and 20% to Ades.
Pursuant to this agreement, the parties incorporated Merrall on April 17, 1956 with an authorized capital stock of 200 shares of no par value. Fromkin contracted to purchase the lots for $82,350 and on April 27,1956 he assigned that contract to Merrall which took title on May 4, 1956.
Fromkin, Schwartz and Ades gave the defendant Arbeit, a licensed architect, 4, 4 and 2 shares, respectively, of their Merrall stock in consideration of professional services to be rendered by Arbeit. Since May 3,1956 Fromkin, Schwartz, Ades and Arbeit have been the sole stockholders of Merrall, owning 36, 36,18 and 10 shares, respectively. They are also Merrall’s sole directors and officers, to wit, Schwartz is its president, Arbeit its vice-president, Ades its secretary and Fromkin its treasurer.
In June, 1956 Travelers Hotel was completed at a cost of approximately $650,000. By November, 1958 it had been enlarged to 112 rooms at an additional cost of $610,000 and in .May, 1959 further improvements were made at a cost of $190,000. The total cost of construction to May, 1959, inclusive of all improvements, amounted to approximately $1,450,000.
In November, 1959 an offer was made to purchase 37 of the 55 lots located in the block adjoining Travelers Hotel for the purpose of erecting a hotel thereon. That offer was accepted and a contract, dated November 23, 1959, was entered into on behalf of Merrall by Schwartz, its president, as seller, and defendant Land & Building Investors, Inc., as purchaser, for the sum of $361,000.
On or about February 11,1960 the plaintiffs filed a Us pendens in the present action and on February 18, 1960, served process on one of the defendants. After all defendants were served, Merrall called a meeting of its directors to ratify, confirm and *291 approve the foregoing contract of sale. This meeting was held on May 31, 1960, at which time Schwartz, Ades, Arbeit and Fromkin were present. After objecting to the holding of this meeting, Fromkin left before it was opened. The contract dated November 23,1959 was then ratified and approved.
Plaintiffs contend that the land purchased by Merrall was acquired to protect the interests and investments of the stockholders of Travelers and, specifically, to protect Travelers Hotel from competition by a motel or hotel that might otherwise be erected on the property purchased by Merrall. Plaintiffs claim that Fromkin, Schwartz and Ades mutually agreed as follows: Upon the acquisition of title to the 61 lots, they and the corporation to be formed would impose a restrictive covenant thereon which would prohibit the use of said land for a hotel or motel; that each of the individual parties would be a director and officer of the corporation to be formed and each would vote his stock for the others’ continuance as directors and officers so long as any one of them remained a stockholder of Travelers; and that so long as any one of the individual parties was or continued to be a stockholder of Travelers, the unanimous consent of all stockholders and/or directors of the corporation to be formed would be required with respect to any sale of the land or any part thereof which was to be acquired by said corporation. Defendant Arbeit is alleged to have agreed to be bound by the aforesaid agreement with the same force and effect as if, originally, he had been party thereto.
Fromkin testified that at a meeting of Merrall’s stockholders and directors held at the office of his attorney, between the hours of 10:00 a.m. and 12:30 p.m. of May 3, 1956, Schwartz, Ades, Arbeit and he agreed to enact as by-laws of Merrall all of the provisions of the aforesaid agreement relative to the restrictive use of the land which was to be acquired by Merrall the following day, and that the unanimous consent of all of the stockholders and/or directors would be required in the event of the subsequent sale of such real property. He further testified that Schwartz requested the minute book, stock transfer book and stock ledger book of Merrall, stating that his attorney would prepare the minutes of the meeting and the agreed by-laws; and that the books were given to him for that purpose.
In furtherance of plaintiffs’ contention, Fromkin offered in evidence a letter dated May 23, 1956 (plaintiffs’ Exh. 5), from Arbeit to the New York City Planning Commission. After requesting that the land owned by Merrall be rezoned from a “ Residential ” and “ Local Retail ” district to a “ Restricted Retail” district, Arbeit wrote: “It is proposed that this area *292 be used for a restaurant, aviation trade school and/or office building, not to exceed two stories in height, and to harmonize with the present structure now under construction in the adjoining block to the west known as The Travelers Hotel and which we own. The new facilities will be, in effect, an adjunct to the adjoining new hotel. The hotel has so vastly improved the tempo of this neighborhood that this rezoning, when granted, would still further improve and benefit this entire neighborhood.” Formal application for such rezoning, made on behalf of Merrall, was granted on September 19,1956.
Fromkin further testified that at a meeting in June, 1957 with Schwartz and Ades, Schwartz, acting for both, told him (Fromkin): “ ‘ I want out of the Travelers Hotel as of now.’ I said, ‘ Mister Schwartz, what is your price ? ’ He says, ‘ I want $200,000, and you will give it to me or I will sweat it out of you. ’ I took my hat and coat and left ’ ’.
Fromkin further testified that in October, 1959 a Mr. G-latter, then president of Land & Building Investors, Inc., came to see him in Travelers Hotel and advised him that his corporation was buying the land involved for the purpose of building a hotel. He was told, according to Fromkin, ‘ ‘ ‘ Mister, you are going to have a lot of headaches because it’s impossible for you to do a thing like this. ’ He says, ‘ Let the lawyers worry about it. Why do I have to worry about it? ’ So immediately after that, I got on the phone and I called Arnold Arbeit. I said, ‘ Arnold, what kind of rezoning job are you doing here ? There is people talking about building a hotel next door.’ He says, ‘ I don’t know nothing. We had it rezoned for an aviation trade school and we had it rezoned for business use.’ He says, ‘ I don’t know how it could be possibly done that way.’ ”
The attorney who had represented Fromkin in his dealings with Travelers and Merrall testified as follows regarding the meeting of May 3, 1956: “ I said that it seemed to me from the conversation that I heard and this is in addressing all of them, that it would be proper to have a stockholders agreement and/or a declaration of restrictive covenant. Mr. Schwartz immediately said, ‘ Well, that will cost money, won’t it? ’ I said, ‘ Of course, it will cost money. ’ Mr. Schwartz then said to me, ‘ Well, the corporation doesn’t have any money at this time. We may just as well wait for it. We are all friends here. We have our agreement. ’ I said, ‘ What are your agreements ? ’ Mr. Schwartz then said to me in the presence of Arbeit, Ades, Fromkin, that they had an agreement that this land was bought for a specific purpose and it was to be limited in use, and that all acts were to be done by all of them together as far as this *293 corporation was concerned; that no one — no sale could be made unless there was a restrictive covenant in a deed, whether the sale was in whole or in part.” The attorney further testified that a memorandum of the agreement was not prepared because his secretary was out for lunch and Schwartz could not wait. When asked if anything was said about unanimity of consent among the stockholders, this attorney replied: “ Mr. Schwartz said that all corporate acts have to be done by way of unanimous consent of all of the stockholders of Merrall Realty.”
In support of their claim, plaintiffs called Irving Bergman and Max Sack. Bergman, who represented Fromkin in labor relations matters and the owner of the La Guardia Hotel “across the way” from Travelers, testified that in the early Summer of 1956 Ades told him that he and Schwartz were buying property adjacent to and around Travelers Hotel in order “ to make sure there would be no other hotel built around it.” Sack, who supplied linens to the Travelers Hotel, testified that Schwartz and Ades had told him that they were acquiring the adjoining land “ to see to it that no competitor would build a competitive hotel there. ’ ’
The defendants Schwartz, Ades and Arbeit denied that any agreement had been made restricting the use of the land owned by Merrall and requiring unanimity of the stockholders for any corporate action. Schwartz testified that Arbeit was not present at the meeting of May 3, 1956, nor did he (Schwartz) leave the meeting with the corporate books. A letter dated May 8, 1956 (defendants’ Exh. 0), from Fromkin’s attorney to Schwartz, stated in part: “ I am not proceeding with the preparation of a Stockholders Protective Agreement at this time, in view of the fact that I did not see the necessity of additional legal expense to yourself. When the zone on the said property had been changed and prior to you going into any leases or construction, etc., the Stockholders Protective Agreement would be a good idea at that time. However, if you wish me to proceed in spite of my explanation, please so advise me by telephone or by return mail.” Schwartz denied that he had any conversation with Fromkin’s attorney relative to a protective agreement “ * * * outside of possibly that in case of death, there would be some protection among the stockholders.”
Defendant Ades testified that Schwartz (his brother-in-law) acted for him in all matters affecting Travelers and Merrall. He denied that Arbeit was present at the meeting of May 3,1956, and that any conversations had even taken place pertaining to restrictions on the use of the land owned by Merrall or for unanimity among the stockholders. He further denied having *294 any conversations with either Bergman or Sack with respect to the land in suit.
Arbeit, while admitting that he was present in the office of Fromkins attorney between the hours of 3:00 and 4:00 p.m., on May 3, 1956, at which time he signed some papers and received his 10 shares of Merrall stock, denied that he was present at the meeting held that morning, or that any discussion with the attorney relative to restrictive covenants took place.
Franklin Blatter, the former president of defendant Land & Building Investors, Inc., testified that he had met Fromkin on only one occasion. That occurred after the execution of the contract when he had been informed by his attorney that there would be some difficulty with the property under contract and that Fromkin was going to file a lis pendens. Blatter testified that he had not been aware of any agreement restricting the use of the land and that Fromkin offered to buy the contract.
Forman N. Obedin, the president of Land & Building Investors, Inc., testified that he was present at the contract closing on November 23, 1959, and that as they were leaving Schwartz said, “ Look, boys. I don’t want any publicity about this.” Obedin further testified that the total cost of the proposed hotel to be built upon the land in suit would be in the neighborhood of $3,300,000 and that plans were submitted to the Building Department which were approved on November 22, 1960, and a permit issued on November 28, 1960, to begin construction.
The evidence in this case is indeed conflicting. While it is not beyond the realm of probability that in acquiring the 61 lots Fromkin, Schwartz and Ades may have intended to protect Travelers Hotel from competition, the court cannot find as fact that they ever formalized such intention into an agreement. Nor is the court able to find on the basis of the evidence that Fromkin, Schwartz, Ades and Arbeit ever agreed that their unanimity would be required with respect to Merrall’s corporate acts.
It is interesting to note that Fromkin’s attorney who had incorporated Merrall was never informed by his client that any restrictions had been agreed upon with respect to the use of the 61 lots to be acquired by said corporation. He testified that until the meeting of May 3, 1956, the alleged agreement as to restrictions on the property and unanimity among stockholders for corporate action were ‘ ‘ completely foreign ’ ’ to him. If in fact the alleged agreement was discussed at that meeting, the court cannot find that Arbeit was present at the time of this purported discussion. Nothing in the minutes of Merrall reflects *295 that any such discussion ever took place or that the claimed agreement was finalized. "While reference to a “ Stockholders Protective Agreement ’ ’ was made in the letter of May 8, 1956 to Schwartz (defendants’ Exh. C), the plaintiffs have not established by any credible proof that such agreement was made during the meeting of May 3, 1956. The attorney, himself, noted: “ When the zone on the said property has been changed and prior to you going into any leases or construction, etc., the Stockholders Protective Agreement would be a good idea at that time.” (Emphasis supplied.) Since the property proposed to be rezoned was, prior to its rezoning, in a ‘1 Residential ’ ’ and ‘ ‘ Local Retail ’ ’ district, pursuant to which, then as now, a hotel was permissible, a so-called stockholders protective agreement for the purposes attested to by the plaintiffs was as necessary for the protection of Travelers Hotel before as after the rezoning. Also, while the letter of May 23, 1956 from Arbeit to the New York City Planning Commission (plaintiffs’ Exh. 5) suggests that the land would be used for purposes other than a hotel, the rezoning sought would enlarge the uses to which the land could be put and thus give greater commercial appeal for subsequent sale and/or lease.
Moreover, about six months after Merrall acquired the lots, it began to offer the property for sale. In March, 1957 an exclusive arrangement was made with James Felt & Company, brokers, under which it undertook to advertise the property for sale and to solicit buyers. On June 16 and 19,1957 the property was advertised for sale in The New York Times. Prior to and subsequent to the advertisements, written solicitations went out to many firms throughout the country and included among them were such corporations as Hilton Hotel, Hotel Corporation of America and Sheraton Hotel. On cross-examination, Fromkin admitted knowing that the property in question was being advertised for sale although he disclaimed any knowledge as to the purpose to which it would be put in the event of a sale. If, as claimed by the plaintiffs, the purchase of the 61 lots in the Spring of 1956 was made with a view of protecting the Travelers Hotel from competition, it is inconceivable that practical effect to such intention was not attempted even after June, 1957 when, according to Fromkin, Schwartz said to him ‘‘ I want $200,000, and you will give it to me or I will sweat it out of you.”
Assuming that the agreement claimed by plaintiffs could be found upon this record, it would, in this court’s opinion, be unenforcible. With respect to that part of the agreement requiring unanimity of stockholders for any corporate acts, it was *296 not authorized by the certificate of incorporation as originally filed or by any amendatory certificate (Stock Corporation Law, § 9, subd. 1, par. [c]). Plaintiffs argue that the agreement with respect to unanimity need not be authorized in the certificate of incorporation since it is in no way violative of an essential part of the State’s policy as reflected in its statutes. (Benintendi v. Kenton Hotel, 294 N. Y. 112.) While not all agreements providing for unanimity among stockholders must be authorized by the certificate of incorporation, the court is constrained toward the view that the agreement here claimed had to be so provided for. It is to be noted that a serious conflict exists between the testimony of Fromkin and his attorney with respect to just what the agreement for unanimity provided. Fromkin testified that only the subsequent act of sale of the land would require unanimity while his attorney testified that all corporate acts of Merrall would require unanimity. Clearly, if the latter version were to be accepted as the agreement, it would unquestionably have to be found in the certificate of incorporation since a similar agreement was struck down in Benintendi v. Kenton Hotel (supra). While there may be room for argument as to whether Fromkin’s version of the alleged agreement would fall within the prohibitions outlined in Benintendi, this court is of the opinion that it, too, must be authorized by the certificate of incorporation of Merrall, whose primary purpose of corporate existence is to deal in real property. That being so, the distinction between a unanimity requirement for the sale of Merrall’s real property or for all corporate acts disappears. In Matter of Faehndrich (2 N Y 2d 468, 473) the Court of Appeals, in passing upon a by-law requiring a two-thirds vote of the shares of stockholders, said: “ A by-law of the corporation, as already noted, required a quorum of two thirds of the shares at special meetings of the stockholders and, eoncededly, that amount of stock was not represented. However, the by-law provision, since it was not authorized by the certificate of incorporation as originally filed or by any amendatory certificate (Stock Corporation Law, § 9, subd. 1, par. [c]), is invalid, ‘ because it contravenes an essential part of the State policy ’ as reflected in its statutes. (Benintendi v. Kenton Hotel, 294 N. Y. 112, 117.) ” In Matter of Teperman v. Atcos Baths (6 Misc 2d 162, 165, affd. 7 A D 2d 854), where a unanimity provision not provided for in the certificate of incorporation was considered, the court stated: “There remains only petitioner’s argument that his removal was in violation of an express agreement that all actions by the stockholders must be by unanimous consent. The articles of incorporation contain no such provision. Section *297 9 of the Stock Corporation Law requires that such provision be contained in the certificate of incorporation, or in an amendment thereto, filed pursuant to the Stock Corporation Law.”
The cases relied upon by plaintiffs are not to the contrary. Clark v. Dodge (269 N. Y. 410) and Tremsky v. Green (106 N. Y. S. 2d 572) concern themselves with unanimity agreements affecting the election of certain persons as directors and to continue such persons in the directorate. An agreement by a stockholder to vote for certain persons as directors is not unlawful. What the Benintendi case condemned, as Judge (now Chief Judge) Desmond stated, at page 118, is “an absolute, permanent, all-inclusive power of veto.” Where, as here, a corporation is expressly formed to deal in real estate, an agreement requiring unanimity among stockholders for the sale thereof is in the opinion of this court an “ all-inclusive power of veto.”
The reason for the requirement that a limitation upon majority control must be set forth in the certificate of incorporation is apparent. If a person dealing with the corporation should desire to ascertain whether a limitation upon the right of the majority to determine corporate action exists, he can examine the certificate of incorporation at the office of the Secretary of State or in the County Clerk’s office. If a departure from the statutory rule of majority control could be accomplished by private or secret by-law provisions or agreements, then any person dealing with the corporation would do so at his peril and without means of determining what percentage of the vote of the stockholders and/or directors is sufficient to bind the corporation. This reasoning is apparent from the 1948 Report of the Law Revision Commission in which the adoption of section 9 of the Stock Corporation Law was urged. At page 387 the commission recommended: “ A requirement that the provision for unanimity or qualified majority appear in the certificate of incorporation itself rather than in any by-law or extrinsic agreement. This makes certain that there will be a public record of the requirement and of its terms, and implements (through operation of the existing provisions for amendment of a certificate of incorporation) the method by which it may be changed. ’ ’ (Emphasis supplied.)
The Statute of Frauds has been pleaded as a defense to that part of the alleged oral agreement wherein it is claimed that the parties agreed to restrict Merrall’s land from being used for hotel or motel purposes. The plaintiffs have attempted summarily to dispose of this defense by the citation of King v. Barnes (109 N. Y. 267). That case, however, did not involve any agreement to restrict the use of real property. The court *298 held merely that a parol agreement between parties to engage in the business of buying and selling lands is not violative of the Statute of Frauds. The agreement here claimed involves the restriction of the use of real property and, in the court’s opinion, its enforcibility is barred by the provisions of section 242 of the Real Property Law. In Dunbar Camps v. Amster (279 App. Div. 605, affd. 303 N. Y. 958), wherein the plaintiff sought to enjoin the operation of a boys’ camp on certain lake front land on the basis of an alleged oral agreement not to operate such a camp, the Appellate Division of the Second Department said: “ The alleged oral agreement not to operate a camp on certain land is barred either by section 242 of the Real Property Law, or subdivision 1 of section 31, of the Personal Property Law. The authority of White v. La Due & Fitch, Inc. (303 N. Y. 122) and kindred cases is inapplicable. They have to do with representations as to a uniform plan of development, an element which is not present in the case at bar. In the present case the alleged agreement is essentially one not to engage in a competing business and is clearly within the province of the Statute of Frauds.”
Judgment is accordingly granted dismissing the complaint on the merits. Since the court cannot find that this action was brought in bad faith, the second counterclaim asserted by the defendant Land & Building Investors, Inc., is dismissed on the merits. Said defendant, however, is granted judgment with respect to its first counterclaim to the extent of declaring the contract dated November 23, 1959, to be valid and not subject to any of the restrictions claimed by the plaintiffs. The cross claims of this defendant are dismissed as are also the counterclaims asserted by the defendant Merrall. There will be no costs in favor of the parties.
While the foregoing opinion contains all the facts essential to the disposition made and is, therefore, a sufficient “ decision ” within the meaning of section 440 of the Civil Practice Act, the court has been compelled to pass upon the requests to find and conclusions of law of the respective parties submitted pursuant to section 439 of the Civil Practice Act. Many of these requests have been refused because inconsistent with the facts found in this opinion; others, because they are argumentative or inaccurate, reflect testimony rather than ultimate findings or deal with elements which are unnecessary to this decision.