■ In the Matter of the Estate of HUGH H. HIRSHON, Deceased. WILLIAM H. BAUGHER et al., as Testamentary Trustees of HUGH H. HIRSHON, Deceased, Appellants; BERNARD TOMPKINS, as Special Guardian for Certain Named Infant Remaindermen, Respondent.— In a proceeding by six testamentary trustees to determine the validity of a certain testamentary trust (Trust No. 1, the Wilson Trust), the petitioners appeal, as limited by their briefs, from so much of a decree of the Surrogate's Court, Queens County, entered December 29, 1961 upon the decision of the court (see 221 N. Y. S. 2d 583), as declared the trust to be valid and as denied the petition which sought to have the trust declared to be invalid. Decree, insofar as appealed from, affirmed, with costs to all parties filing briefs, payable out of the said testamentary trust. No opinion. Kleinfeld, Hill and Rabin, JJ., concur; Ughetta, Acting P. J., and Brennan, J., dissent in part and vote to modify the decree as indicated in the following memorandum: We dissent in part and vote to modify the decree by adding at the end of its first decretal paragraph, which adjudges that the creation by the will of " Trust No. 1, or the Wilson Trust, is a valid disposition of the property," the following paragraph: " That such trust constitutes a valid disposition except with respect to those provisions of the will which require the trustees to vote the stock of W. S. Wilson Corporation in such manner as to elect the testator's widow or his daughter as chairman of the board of directors with a fixed compensation plus bonus; and that such testamentary provisions are hereby declared to be invalid, and, as such, they are hereby deemed to be excised from the testator's will." Ordinarily, the stockholders of a corporation may combine (by voting agreement) to adopt a policy for its operation and for the election of its directors so long as its officers and directors are not inhibited in the performance of their functions and in the exercise of their judgment. But even such limitation against interference is inapplicable if all the stockholders have joined in the agreement. Together, the stockholders can do with the corporation whatever they wish. In the case at bar, however, the testator owned only 68% of the stock. Under such circumstances he cannot be permitted to treat the corporation as his personal possession. A brief review of the pertinent cases will serve to show that a majority stockholder (unless he be the sole stockholder) cannot dictate the choice of the corporate officeholders or their salaries; and certainly not in a case where, as here, the perquisites of the

officeholders would include a bonus payable out of the excess of current profits over the profits realized in a specified previous year, to wit, 1948 (par. Eleventh). Such an arrangement would be at the expense of minority stockholders. Paragraph Third of the will, which specifically provided that the trustees should retain the Wilson corporation stock as the corpus of the trust "upon the condition that a minimum income" be payable to the testator's widow and daughter for life, makes it clear that here the testator had in mind a sum to be provided for his widow and daughter, during their lives, payable not (if he could help it) out of the estate, but rather from the corporate treasury. In *Manson* v. *Curtis* (223 N. Y. 313), where there were minority stockholders, an agreement of the majority stockholders, which in effect provided for one-man operation by a manager and relegated the president and directors to the status of dummies, was held to be illegal. In *McQuade* v. *Stoneham* (263 N. Y. 323), the agreement was between a majority stockholder (Stoneham) and two others (McGraw and McQuade), each of whom had purchased a relatively small number of shares of stock from Stoneham. As in the present will, they agreed on salaries, officers and terms of office. Despite such agreement, Stoneham voted McQuade out of office. The agreement was held to be illegal and McQuade's claim for damages was dismissed. On the other hand, in *Clark* v. *Dodge* (269 N. Y. 410), where the stock ownership by the parties was 25% and 75%, respectively, the agreement between them as owners of all the stock, to continue Clark as active manager of the corporation at one fourth of the corporate net income by way of salary or dividends, was upheld. The court there said: "Where the directors are the sole stockholders, there seems to be no objection to enforcing an agreement among them to vote for certain people as officers" (269 N. Y. 410, 415). Finally, in *Rochester* v. *Bergen* (265 App. Div. 547), citing the *McQuade* case, *supra* (263 N. Y. 323), this court considered an agreement between two individuals who did not own all the stock. The agreement provided for a "reciprocal contract of employment" for a stated period. We held the agreement to be invalid on the ground that corporate directors "may not thus fetter in advance their discretion as to the selection and maintenance in office of the officers of a corporation." In light of the above, it is clear that, where the corporation is not the *alter ego* of the contracting parties, the directors, who are charged by law with the management of the business (General Corporation Law, § 27), may not be supplanted in the performance of their duties with respect to matters of personnel and salary. Accordingly, the provisions of the will which are invalid should be excised. Because of these invalid provisions, however, it is not necessary (as the petition demands) to declare the entire trust to be invalid. Sometimes, of course, an offending portion of a will so distorts the testamentary scheme that resort to the law of intestacy is required. But wherever possible, valid provisions of the will are to be preserved (*Matter of Lyons*, 271 N. Y. 204). It is true that the testator here created the trust in order to insure "minimum income" to his widow and daughter, and he prefaced his direction to the trustees concerning voting of the stock with the words: "As a condition of this trust" (par. Sixteenth). But he nevertheless envisioned the continuation of the trust even if the "minimum income" was not paid as salary to his widow and daughter. In that event he made detailed provisions in paragraphs Thirteenth, Fourteenth and Fifteenth of the will. Indeed, in paragraph Seventeenth he provided that: "In the event 'minimum income' is not paid as aforesaid in the form of compensation by W. S. Wilson Corporation and subsidiaries, any balance of income shall be paid out of the income of this trust." In other words, he clearly intended that should "minimum income" not be paid as salary, then it was to be supplied

out of profits in any event. Reading the will (and codicils) as a whole, we conclude that it was the testator's dominant purpose to give the trust income to his widow and daughter during their respective lives; to give 75% of the trust corpus to his grandchildren, and to give 25% of the trust corpus to the issue or descendants of his siblings.