George Tilzer, J.
Corporate plaintiff moves for summary judgment against defendant Bankers Trust Company and inter-pleaded defendant Paul Richter, doing business as Meade & Company. By this motion, plaintiff seeks a declaratory judgment that it is entitled to possession and control of certain securities and funds deposited by it with defendant Bankers Trust Company.
At the outset, it should be noted that a prior motion in this action brought on by defendant bank to discharge said bank as a stakeholder, pursuant to subdivision 4 of section 134 of the Banking Law, and decided in favor of said defendant by Mr. Justice Loreto (Mohawk Ins. Co. v. Bankers Trust Co., 36 Misc 2d 882) is in no way dispositive of the issues herein. Defendant Richter’s arguments in this regard are without merit, since *1007 Mr. Justice Loebto merely determined that the bank should no ‘1 longer suffer the unwarranted burden or any continued risk in holding plaintiff’s property ” and that the securities in issue could be transferred to another party. No other question was properly before the court and no other question was passed upon.
As to the issue presented on the instant motion, it is the claim of the interpleaded defendant Eichter that an oral agreement existed between plaintiff and Richter to the effect that one of Richter’s representatives would be cosignatory of plaintiff’s funds.
Paul Richter, doing business as Meade & Company (hereinafter referred to as “Richter”) acted as the underwriter for plaintiff’s stock and as of February 28, 1962 was the owner of 13,572 shares of the 75,000 shares publicly sold. Pursuant to the underwriting agreement Richter was given the right to nominate three directors of the plaintiff insurance company. One of such directors was thereafter elected secretary treasurer of the plaintiff. The defendant Bankers Trust Company (hereinafter referred to as the “Bank”), as depository of the plaintiff, was advised that all instruments for the payment of money on deposit with the Bank would be subject to the signature of the president or vice-president, together with that of the treasurer.
On June 12,1962 at a meeting of plaintiff’s board of directors at which a quorum was present, and pursuant to the by-laws of plaintiff, Richter’s nominee Conkling was removed as secretary treasurer and new officers were elected. Thereafter the Bank was given copies of resolutions designating the new signatories on plaintiff’s accounts. However, Richter wrote to the Bank on June 14,1962, claiming that the replacement of Conkling was void and that any checks drawn on the plaintiff’s funds “ which do not bear the signature of Charles Conkling should not be honored.” As a consequence, when a number of days later the plaintiff drew a check for $20 for postage against its checking account, the check was returned by the Bank with the legend “ One signature unauthorized ”. The plaintiff’s accounts in the Bank in excess of one million dollars thereupon were frozen.
The Bank, it must be observed, does not oppose the motion for summary judgment. No damages are sought against it. The Superintendent of Insurance, and interpleaded defendant, does not oppose the motion. Nor does Richter make any claim to these funds. The sole issue is the legality of the position urged by Richter in his letter of June 14, 1962 to the Bank *1008 wherein he stated that Cohkling’s replacement as a signatory was illegal and void. The basis of Richter’s claim for joint control of plaintiff’s funds is not the underwriting agreement, which in great detail spelled out the rights of the parties, but an alleged oral agreement between plaintiff and Richter that the approval of one of the directors who had been nominated by Richter would at all times be necessary with respect to all transactions in which funds or securities would be withdrawn from bank accounts of plaintiff.
Plaintiff denies that such oral contract was made. Richter is of the view that there is thus presented a question of fact which precludes the granting of summary judgment. He further asserts that the alleged oral contract involved but a mere ministerial act providing that Meade & Company, through its designee, must join in the signing of all drafts and orders on the plaintiff’s securities and funds accounts.
We are thus presented with a situation where the directors of a corporation are sought to be bound by an oral contract between a stockholder and the corporation. Assuming the existence of the oral agreement, joint control by Richter of the corporation’s funds may not be viewed as a “ ministerial act ” or as a minor or innocuous impingement upon the power of the directors to manage the business of the corporation. The exercise of this power encompasses more than the physical act of signing a check. It constitutes a direct impairment of the function of the directors of the corporation charged with the administration of its affairs, the use of its funds and the appointment and removal of its officers. The possessor of the cosignatory right would have complete control over the business of the corporation. Any such contract would be illegal and void.
The court does not question that in advancing his claim of joint control over the funds and securities of the corporation Richter had in mind the best interests of the stockholders to whom he or his firm had sold plaintiff’s stock. His concern may be expressed by appropriate action or proceeding. The means which he has utilized, which has resulted in the freezing of plaintiff’s funds and has brought its business to a standstill, the court cannot sanction. Paul Richter, doing business as Meade & Company, has no right of control by virtue of the alleged oral contract of the funds of the plaintiff on deposit with the Bank. The motion is granted.