In the Matter of the Arbitration between NEWTON GLEKEL, Appellant, and MAXWELL H. GLUCK, Respondent.

First Department, June 10, 1971.

*George G. Gallantz* of counsel (*David J. Stern, Bruce S. Wolff* and *Mayer G. Freed* with him on the brief; *Proskauer Rose Goetz & Mendelsohn,* attorneys), for appellant.

*Jesse Climenko* of counsel (*Joel I. Papernik* with him on the brief; *Shea Gallop Climenko & Gould,* attorneys), for respondent.

McNALLY, J. Petitioner-appellant Glekel appeals from a judgment of the Supreme Court, New York County, denying his application to stay an arbitration sought to be initiated by respondent Gluck.

For the reasons hereinafter stated, we hold the agreement relied on to be void, against public policy and in violation of section 701 of the Business Corporation Law and accordingly we reverse, on the law, with costs and with disbursements, and grant the motion to stay the arbitration.

On May 17, 1968, respondent was a director and chairman of the board of A. S. Beck Shoe Corporation (hereinafter " Beck "), a publicly held company listed on the American Stock Exchange, and owned approximately 170,000 of the 420,000 outstanding shares of Beck's common stock.

By agreement dated May 17, 1968 (hereinafter the " Agreement "), petitioner agreed to purchase and respondent agreed to sell 90,000 shares of his Beck stock at $35 per share, the total purchase price being $3,150,000.

The Agreement by its terms assured petitioner control of Beck; not only would petitioner enjoy the voting strength of the 90,000 shares which respondent agreed to sell, but respondent also agreed to vote the shares retained by him " to elect such persons, not to exceed the minimum number required to constitute a majority of the Board of Directors, as may be designated in writing by [petitioner] to the Board of Directors of the Company."

Petitioner, in turn, agreed that if he attained control of the board of directors by virtue of the election as directors of the persons designated by him pursuant to subdivision a of paragraph 7 of the Agreement, then he would, upon respondent's request, " use his best efforts to cause the Company to register under the Securities Act of 1933 and to qualify under state securities laws for sale or distribution such number of shares of the Stock owned by [respondent] as [respondent] shall request ".

While the Agreement is phrased in terms of petitioner's use of " best efforts ", respondent's theory is that it made petitioner a guarantor of the filing of a registration statement by Beck, for it provided that: " If the Company shall fail to file a registration statement pursuant to the Securities Act of 1933 as required by this subparagraph 7.d. within forty-five days after a request therefor by [respondent] and promptly thereafter fail to file to qualify the securities for sale under the laws of such states as [respondent] shall request * * * such failure

*shall constitute a breach of the provisions of this subparagraph 7.d* ". (Emphasis supplied.)

Paragraph 15 of the Agreement provided for arbitration of any controversy or claim " arising out of or relating to the provisions of subparagraph 7.d. , which referred only to petitioner's obligations to cause the registration of respondent's stock.

The closing of the Agreement took place on May 31, 1968. Thereafter, respondent continued as a director of Beck, petitioner was elected a director, and respondent and petitioner served as members of the executive committee of the board of directors.

The Agreement between petitioner and respondent assured petitioner control of a publicly held corporation and required him, at the risk of personal liability, to cause the corporation to file a registration statement at respondent's request and for respondent's benefit irrespective of whether such filing was in the best interests of the corporation. At the time respondent requested the filing of a registration statement petitioner was a director of Beck and believed that such filing would not be in the best interests of the corporation.

Section 701 of the Business Corporation Law has been construed in *Manson* v. *Curtis* (223 N. Y. 313) as prohibiting any interference with the exercise of a director's discretion. Since that decision, the courts of New York have consistently held that agreements precluding directors from exercising their discretion and judgment in the discharge of their duties are void as against public policy. (*Long Park* v. *Trenton-New Brunswick Theatres Co.*, 297 N. Y. 174; *McQuade* v. *Stoneham*, 263 N. Y. 323; *Mohawk Ins. Co.* v. *Bankers Trust Co.*, 36 Misc 2d 1006; *Watkins* v. *Passannante*, 114 N. Y. S. 2d 488.)

The fact that petitioner was not a director at the time the contract was entered into is immaterial since he was committed to an agreement which did not permit him as director to properly exercise the impartial discretion required of him. (*Watkins* v. *Passannante, supra.*)

The respondent seller Gluck consented to and voted for the election of the petitioner buyer Glekel as director. As director the petitioner buyer is charged with the duty of undivided loyalty to the corporation. Insofar as the contract conflicts with the petitioner's obligation of undivided loyalty to the corporation, it must give way. Hence, petitioner's contractual obligation to use his best efforts to cause the company to qualify respondent's remaining shares for sale is subordinated to the petition-

er's obligation as director to advance the corporation's best interests.

The reasons for which contracts will be held unenforceable, and arbitration stayed, have been passed upon by our courts. Arbitration will be stayed where the main agreement is void and unenforceable as against the public policy reflected in usury laws (*Durst* v. *Abrash,* 22 A D 2d 39, 42, affd. 17 N Y 2d 445), antitrust laws (*Matter of Standardbred Owners Assn.* [*Yonkers Raceway*], 31 Misc 2d 474), securities laws (*Wilko* v. *Swan,* 346 U. S. 427), laws governing the affairs of local villages (*Village of Tarrytown* v. *Woodland Lake Estates,* 19 N Y 2d 660), executive orders (*Matter of Kramer & Uchitelle* [*Eddington Fabrics Corp.*], 288 N. Y. 467). The basic test applied in every case is the same: Is the agreement contrary to public policy? In *Durst* v. *Abrash* (*supra*), it was held that if the agreement called for payment of a usurious rate of interest, it was void as against public policy and arbitration would be stayed. In *Village of Tarrytown* v. *Woodland Lake Estates* (*supra*), arbitration of a claim by a builder against the village for reimbursement under a contract was stayed because the method of reimbursement provided in the contract was not in accordance with the Village Law. In *Matter of Kramer & Uchitelle* (*Eddington Fabrics Corp.*) (*supra*), it was held that controlling public policy barred delivery of goods at a certain price and the seller was thus excused from performance as a matter of law. (See, also, *Matter of National Equip. Rental* [*Amer. Pecco Corp.*], 35 A D 2d 132, affd. 28 N Y 2d 639.)

Further, no contract can bind directors to predestined corporate action or policy, irrespective of their own judgment and discretion. (*Blaustein* v. *Pan Amer. Petroleum & Transp. Co.,* 263 App. Div. 97, affd. 293 N. Y. 281, rearg. den. 293 N. Y. 763.) At page 108 this court said as follows: "Even if the objects of signatories to the agreement seemed to them at the time they signed it the highest wisdom and the best possible course for Pan Am to pursue, neither that agreement nor any other contract among such parties could be made the inflexible rule of corporate policy from which directors could not deviate without breach of duty. Corporate management is vested by law in the corporation's directors and no such contract can bind directors to predestined action irrespective of their own judgment and discretion."

By reason of the Agreement in the instant case, the petitioner's discretion was hamstrung, having abrogated his independent judgment on a matter of vital concern to Beck, namely, whether a registration statement covering respondent's stock should be

filed at the risk of impairing Beck's ability to raise needed working capital by a public offering, contrary to the public policy expressed in section 701 of the Business Corporation Law. In any event if the claimed illegality is not clear, as matter of law, we would reverse on the law and the facts, and order a hearing on that issue.

NUNEZ, J. (dissenting). I would affirm. In my view the Special Term memorandum opinion accurately sets forth the applicable law. The petition to stay arbitration was properly denied. At the time of the execution of the agreement appellant was not a director; appellant agreed only to use his "best efforts"—not illegal efforts—to cause the company to register the Gluck stock. Appellant now contends that the provisions of the agreement as to which arbitration is sought, are illegal because they require him to abrogate his judgment as a director. However, his present position flies directly in the face of his own interpretation of the agreement stated shortly before this litigation commenced when he wrote respondent: "I have not failed to satisfy my obligations under my agreement of May 17, 1968 with you."

I can see no issue of public policy involved in appellant's covenant to use his best efforts to persuade the corporation to register Gluck's stock; this controversy involves only the rights of two individuals under a contract containing a broad arbitration provision. Nor does it involve positive violations of legislative enactments requiring the enjoining of arbitration. All issues herein raised are for the arbitrators. "A written agreement to submit any controversy thereafter arising * * * to arbitration is enforceable without regard to the justiciable character of the controversy * * * the court shall not consider whether the claim * * * is tenable, or otherwise pass upon the merits of the dispute." (CPLR 7501.)

Besides the cases cited by Special Term, see *Matter of National Equip. Rental (Amer. Pecco Corp.)* (35 A D 2d 132, affd. 28 N Y 2d 639); *Matter of All State Tax Serv. of Area 5 (Kerekes Bros.)* (34 A D 2d 935); *Matter of Vogel (Lewis)* (25 A D 2d 212, affd. 19 N Y 2d 589); and *Matter of Kaliski* v. *Rosenberg* (34 A D 2d 626, mot. for lv. to app. dsmd. 27 N Y 2d 727).

CAPOZZOLI, J. P., MARKEWICH and MACKEN, JJ., concur with MCNALLY, J.; NUNEZ, J., dissents in an opinion.

Judgment, Supreme Court, New York County entered on January 13, 1971, reversed, on the law, the motion granted and arbitration stayed. Appellant shall recover of respondent $30 costs and disbursements of this appeal.