Long Park, Inc., Suing for Itself and All Other Stockholders of Trenton-New Brunswick Theatres Company Similarly Situated, Appellant, *v.* Trenton-New Brunswick Theatres Company et al., Defendants, and B. F. Keith Corporation, Respondent.

Argued November 10, 1947; decided January 16, 1948.

*John W. Davis, George A. Brownell, William H. Timbers* and *Solomon Goodman* for appellant. I. The agreement is illegal because the powers and duties taken away from the board of directors are such as to prevent it from managing the business of the corporation. (*McQuade* v. *Stoneham,* 263 N. Y. 323; *Jackson* v. *Hooper,* 76 N. J. Eq. 592; *Manson* v. *Curtis,* 223 N. Y. 313; *Fells* v. *Katz,* 256 N. Y. 67; *Benintendi* v. *Kenton Hotel,* 294 N. Y. 112; *Clifford* v. *Firemen's Mutual Benevolent Assn.,* 232 App. Div. 260; *Shaw* v. *Bankers National Life Ins. Co.,* 61 Ind. App. 346.) II. The agreement is illegal because the powers and duties taken away from the board of directors may be transferred to parties which the directors have no power to select or change. (*Matter of Allied Fruit & Extract Co.,* 243 App. Div. 52; *Olcott* v. *Tioga Railroad Co.,* 27 N. Y. 546; *Klein* v. *Journal Square Bank Building Co.,* 110 N. J. Eq. 607; *Caldwell* v. *Mutual Reserve Fund Life Assn.,* 53 App. Div. 245.) III. Special Term erred in refusing to grant a judgment declaring the agreement to be illegal, void and unenforcible. (*Benintendi* v. *Kenton Hotel,* 294 N. Y. 112; *Lowe* v. *Lowe,* 265 N. Y. 197.)

*Monroe Goldwater, Harry Rodwin* and *Bernard Katz* for respondent. I. The agreement of September 1, 1942, does not divest the directors of Trenton of their duties and functions.

(*Benintendi* v. *Kenton Hotel,* 294 N. Y. 112; *Miller* v. *Vanderlip,* 285 N. Y. 116; *Clark* v. *Dodge,* 269 N. Y. 410; *Matter of American Fibre Chair Seat Corp.,* 265 N. Y. 416; *Ripin* v. *U. S. Woven Label Co.,* 205 N. Y. 442; *Lorillard* v. *Clyde,* 86 N. Y. 384; *Brightman* v. *Bates,* 175 Mass. 105; *Schneider* v. *Greater M. & S. Circuit, Inc.,* 144 Misc. 534.) II. The agreement does not take away any powers and duties from the board which may be transferred to others over whom the board has no power of selection or change. (*Klein* v. *Journal Square Bank Building Co.,* 110 N. J. Eq. 607; *Caldwell* v. *Mutual Reserve Fund Life Assn.,* 53 App. Div. 245.) III. The arbitration clause is valid and does not render the agreement illegal. (*Matter of Feuer Transportation, Inc. [Local No. 445],* 295 N. Y. 87; *Farulla* v. *Freundlich, Inc.,* 152 Misc. 761; *Matter of Carl,* 263 App. Div. 887.)

THACHER, J. The plaintiff, Long Park, Inc., a corporate stockholder of Trenton-New Brunswick Theatres Company (hereinafter referred to as Trenton), appeals from a judgment dismissing the complaint in an action brought in behalf of itself and of all other stockholders of Trenton for a declaratory judgment determining the validity or invalidity of an agreement to which all of the stockholders of Trenton and Trenton itself were parties. This agreement was held valid at Special Term and in the Appellate Division, and the single question presented here is whether the challenged portions of the agreement are invalid under the provisions of section 27 of the General Corporation Law of the State, which provides: "The business of a corporation shall be managed by its board of directors ". The same provision appears in the New Jersey statute (New Jersey Statutes, tit. 14, Corporations, General, § 14:7-1).

The principal defendant, B. F. Keith Corporation (hereinafter referred to as Keith), is a corporation organized and existing under the laws of the State of New York and, pursuant to the terms of the agreement in question, has for some time been acting as manager of all theatres leased and operated by Trenton. The plaintiff and all of the other corporate defendants are corporations organized and existing under the laws of the State of New Jersey. The appellant and the respondent have stipulated that for the purposes of this suit the agreement

dated September 1, 1942, is in all respects a New York contract made and entered into in the State of New York and that it is to be construed according to the laws of the State of New York. The question presented by counsel both for the appellant and the respondent upon this appeal is whether the agreement of September 1, 1942, is valid and legal under the laws of this State. Under these circumstances we are not impelled to relinquish our discretionary jurisdiction.

The authorized capital stock of Trenton consists of 1,000 shares of the par value of $100 each, divided into four classes of 250 shares, designated as Class A-1, Class A-2, Class B and Class C. The Class A-1 and Class A-2 shares are owned by defendant-respondent Keith, the Class B shares are owned by plaintiff-appellant, and the Class C stock is owned by Trenton Theatres Building Company.

The agreement is for a period of nineteen years from September 1, 1942, to August 31, 1961, with an option in Trenton to extend the term.

With reference to the powers of Keith as the owner of all the Class A-1 and Class A-2 stocks and as the manager of the theatres, article XIV of the agreement provides:

" SECTION 1. *Management of Theatres*: During the term of this agreement, unless the management of the theatres is changed as hereinafter provided, the holders from time to time of the Class A-1 and A-2 stocks of the Tenant, agree to manage, or to cause RKO Service Corporation or any company affiliated with and designated by the holders of such Class A-1 and A-2 stocks, to manage the Capitol, Palace, Trent, South Broad, Lincoln, State (during the term of the lease of said State Theatre or any extension or renewal thereof) and Brunswick Theatres, all in the City of Trenton, New Jersey, and the Albany, Rivoli and State Theatres in the City of New Brunswick, New Jersey, and any other theatres which may hereafter be leased or operated by the Tenant or any subsidiary thereof. The person managing such theatres (which shall be the holders of Class A-1 and A-2 stocks unless and until the management is changed as hereinafter provided) from time to time during the term of this agreement, is herein sometimes referred to as ' the Manager.'

" The Manager is hereby given full authority and power to supervise and direct the operation and management of all such

theatres and in furtherance and not in limitation of the foregoing, it shall have power and authority to buy and book all features, short subjects, newsreels and other motion pictures, stage shows, personal appearances, television and other attractions and entertainment to be exhibited, played or performed in the theatres; to designate and, from time to time, to change the entertainment policy and scale of admission prices; to select, engage, supervise and direct and discharge any and all necessary employees or personnel for each of said theatres; to maintain the theatres in good operating condition; to do any and all other acts and things which are customary in connection with the management of theatres; and to carry out such policies or projects as the Board of Directors of the Tenant or its subsidiaries may approve.''

These powers continue as stated '' unless and until the management is changed as hereinafter provided '', and the provision for change is found in section 4 of article XIV and reads as follows:

'' SECTION 4. *Change of Management*: Anything in this Article contained to the contrary notwithstanding, the holders of a majority of the B stock and a majority of the C stock jointly may, at any time and from time to time during the term of this agreement, submit to the American Arbitration Association the question as to whether or not the management of the Tenant and its subsidiaries should be changed from management by the holders of A-1 and A-2 stock of the Tenant to management by the holders of B and C stock jointly.'' Under provisions relating to the arbitration neither the holders of the B and C stock jointly nor the holders of the A-1 and A-2 stock jointly have any right to submit to arbitration the question of a change of management for a period of one year after the effective date of the last change of management.

By virtue of these provisions the management of all theatres leased or operated by Trenton or any subsidiary is vested in Keith, without approval of the directors, and this management may not be changed by the directors but only as provided in section 4 above quoted. The directors may neither select nor discharge the manager, to whom the supervision and direction of the management and operation of the theatres is delegated with

full authority and power. Thus the powers of the directors over the management of its theatres, the principal business of the corporation, were completely sterilized. Such restrictions and limitations upon the powers of the directors are clearly in violation of section 27 of the General Corporation Law of this State and the New Jersey statute (*Benintendi* v. *Kenton Hotel,* 294 N. Y. 112; *McQuade* v. *Stoneham,* 263 N. Y. 323; *Manson* v. *Curtis,* 223 N. Y. 313).

We think these restrictions and limitations went far beyond the agreement in *Clark* v. *Dodge* (269 N. Y. 410). We are not confronted with a slight impingement or innocuous variance from the statutory norm, but rather with the deprivation of all the powers of the board insofar as the selection and supervision of the management of the corporation's theatres, including the manner and policy of their operation, are concerned.

The judgments should be reversed, with costs in all courts, with directions to enter a judgment in favor of the appellant declaring the agreement of September 1, 1942, to be illegal, void and unenforcible.

FULD, J. (dissenting). I might, if we were dealing with a corporation organized and operating in this State, agree that the contract here involved was violative of section 27 of the General Corporation Law. In my view, however, that question is not before us. In a case such as this — where the corporation, the Trenton-New Brunswick Theatres Company, is one organized in the State of New Jersey, and, indeed, doing no business in New York, and where the agreement is one dealing with matters intimately affecting that foreign corporation's internal affairs — the courts of this State should not entertain jurisdiction.

Pursuant to a plan evolved by the parties to this litigation, or their predecessors in interest, for the pooling of their respective holdings in moving picture theatres, defendant Trenton-New Brunswick Theatres Company — referred to as " Trenton " — was organized in New Jersey in 1922. Its sole business then was, and now is, the operation and management of theatres located in New Jersey. The agreement before us was entered into in 1942 by Trenton and its three stockholders; it followed an earlier one, substantially to the same end, which

had been in force continuously for twenty years. The agreement created four classes of stock; in addition to other matters, some relating to the election of officers and directors, it provided that during its term the holders of the class A-1 and A-2 stocks — at the time and at present, the B. F. Keith Corporation, referred to as " Keith " — were to have " full authority and power to supervise and direct the operation and management " of all Trenton's theatres. Several years after execution of the agreement, in 1945, plaintiff apparently became dissatisfied with the arrangement and, through its representative on Trenton's board of directors, asked that the management contract with Keith be terminated. Since two of the four members of the board were representatives of Keith, plaintiff's motion failed. This action followed.

In its complaint plaintiff prayed for judgment (1) enjoining Keith from managing or interfering with the management of the business of Trenton, and (2) directing defendants to account for the results of past management. What induced plaintiff, itself a New Jersey corporation, to bring suit in this State, what induced defendant Trenton — not doing business here and not subject to process — to appear voluntarily, is nowhere accounted for. At the trial, the action was treated as one for a declaratory judgment. The courts below have held the 1942 agreement valid, and the majority of this court propose to declare it illegal as being violative of section 27 of the General Corporation Law of this State.

In my opinion, no declaration on the merits should issue — and for several reasons.

In the first place, I question whether the courts of this State have jurisdiction, in the strict sense of the term, to entertain this suit in view of section 225 of the General Corporation Law, which allows suits in this State between foreign corporations only in carefully specified cases — the present not being one of them. Defendant Keith, it is true, is a New York corporation, but basically the complaint is concerned with the conduct of the affairs of Trenton, and the effect of the agreement upon that corporation and its board of directors. For instance, it appears from the complaint that Trenton was a party to the agreement; that Trenton's stock has been reclassified pursuant

to the agreement; that Trenton's board of directors has been elected as provided in the agreement; and that Trenton has declined to disavow the agreement. In truth, according to the complaint, the sole challenge to the agreement is that Trenton may not function under it because it is contrary to the requirements of law prescribing how a corporation — Trenton — must be managed. If Trenton is privileged to continue the agreement, it would follow, of course, that Keith is bound to do so. The action is thus at least within the spirit of section 225.

In the second place — quite apart from section 225 — it is a general rule that the courts of one State will not accept jurisdiction of controversies affecting the internal affairs of a corporation organized under the laws of another State. We have held steadfastly to this view, at least in the absence of need for emergency action or of other extraordinary circumstances. (See *Langfelder* v. *Universal Laboratories*, 293 N. Y. 200, 204; *Nothiger* v. *Corroon & Reynolds Corp.*, 293 N. Y. 682, affg. 266 App. Div. 299; *Sternfeld* v. *Toxaway Tanning Co.*, 290 N. Y. 294, 297; *Cohn* v. *Mishkoff Costello Co.*, 256 N. Y. 102, 105; *Powell* v. *United Assn. of Plumbers*, 240 N. Y. 616; *Sauerbrunn* v. *Hartford Life Ins. Co.*, 220 N. Y. 363, 371-372; see, also, *Kimball* v. *St. Louis & San Francisco Railway*, 157 Mass. 7; 17 Fletcher's Cyclopedia Corporations [Perm. ed.], §§ 8425-8429; Note, 46 Col. L. Rev. 414 *et seq.*) The rule has been applied even where the foreign corporation was doing business in this State and plaintiff was a resident. (See, e.g., *Langfelder* v. *Universal Laboratories, supra*; *Sternfeld* v. *Toxaway Tanning Co., supra.*)

No ground has been suggested for departing from that established and salutary principle. This is not a case in which the inquiry into foreign corporate concerns " is merely preliminary or incidental to the inquiry whether a contract has been broken, a tort committed, a right of ownership infringed." (*Travis* v. *Knox Terpezone Co.*, 215 N. Y. 259, 265.) The declaration granted goes to the very heart of the corporation's affairs. Therefore, decisions such as *McQuade* v. *Stoneham* (263 N. Y. 323) have no application.

In point of fact, there are weighty considerations why the rule should here be respected.

First, section 27 of the General Corporation Law, under which the agreement is being condemned, has no application to Trenton. It is plain from its context that that section is limited to domestic corporations, and it is difficult to see what interest the Legislature of this State could have in the method by which corporations neither organized nor doing business here are managed. Where the Legislature was concerned with the activities of foreign corporations, it was careful so to specify. (See, e.g., General Corporation Law, §§ 9, 9-a, 9-b, 12, 18, 222; cf. *German-American Coffee Co.* v. *Diehl*, 216 N. Y. 57, 61.) The manner in which the internal affairs of a foreign corporation, having no substantial contacts with the forum, are to be administered, is ordinarily a matter to be determined solely by reference to the law of the place of incorporation. (Cf. *Vanderpoel* v. *Gorman*, 140 N. Y. 563; *German-American Coffee Co.* v. *Diehl, supra,* pp. 63, 64; *Upson* v. *Otis,* 155 F. 2d 606; Restatement, Conflict of Laws, §§ 197, 183.) Therefore, the mere fact that the agreement was made in New York is of no moment. The stipulation of the parties that the agreement is to be construed according to the law of New York also affords no reason for disregarding the public policy of New Jersey, the State in which Trenton is incorporated. The majority of this court are treating that stipulation as tantamount to an agreement that the New Jersey corporation is to be considered *as if* it were a New York corporation and subject in its management to New York requirements, in disregard of the applicable laws and policy of New Jersey which, as interpreted by their courts, may be different from ours. The majority thereupon propose to invalidate the 1942 agreement as violative of the public policy of New York, yet paradoxically overlook the fact that the stipulation — on the strength of which they reach that result — itself may contravene the public policy of New Jersey. Under the guise of vindicating the public policy of New York, which *is not* in the slightest concerned with the conduct of Trenton, the majority are ignoring the public policy of New Jersey which *is* concerned with it. (Cf. *Manhattan Storage & Warehouse Co.* v. *Movers Assn.,* 289 N. Y. 82, 89–90.)

Second, statutes of the character of section 27 of the General Corporation Law present difficult problems of interpretation.

(See, e.g., *Benintendi* v. *Kenton Hotel,* 294 N. Y. 112.) A New Jersey court, familiar with the legislative history and policy of that State, may construe its own statutory counterpart of section 27 differently — a matter of no concern to us as long as only a New Jersey corporation is involved. Or a New Jersey court, recognizing that the Legislature might itself have relaxed the statute, might conclude to leave the parties as it found them as long as no breach or other violation of private right is shown. In such circumstances, the New Jersey court might well decide that litigation like the present smacks of a suit in the nature of quo warranto and that only the public officials of that State should be heard in vindication of its public policy.

Furthermore, our inability to dispose of the controversy between the parties should militate against our dealing with it to the limited extent here involved. Plaintiff has itself abandoned any thought of injunctive relief, perhaps because that would demonstrate too obviously that the internal affairs of Trenton are involved. However, our declaration — even assuming that a New Jersey court will be bound to honor it — will not facilitate the ultimate disposition of the controversy. The declaration is not self-executing; further judicial action will obviously be required. The New Jersey court will have to determine the scope and the consequences of the declaration: it will have to decide, among other matters, whether the agreement with Keith may continue on a day-to-day basis or in some other modified form and whether the reclassification of Trenton stock — actually provided for by the agreement now declared illegal — is to stand. (See *Kimball* v. *St. Louis & San Francisco Railway, supra,* pp. 8–9.)

In *Travis* v. *Knox Terpezone Co., supra,* 215 N. Y. 259, 263, it was noted that the refusal to adjudicate controversies such as the one before us might be due either " to the absence of jurisdiction in the strict sense, or to the inability to make a decree effective, or to considerations of policy and discretion ". Atlhough we have on occasion indicated that our decision might rest on lack of jurisdiction (see e.g., *Langfelder* v. *Universal Laboratories, supra,* p. 206; *Cohn* v. *Mishkoff Costello Co., supra,* p. 105; *Sauerbrunn* v. *Hartford Life Ins. Co., supra*), the better view perhaps is that the courts of this State should refrain from

entertaining the litigation because of vital and all-important policy considerations. (See *Sternfeld* v. *Toxaway Tanning Co., supra; Cohn* v. *Mishkoff Costello Co., supra; Kimball* v. *St. Louis & San Francisco Railway, supra,* pp. 8–9; *Thompson* v. *So. Connellsville Coke Co.,* 269 Pa. 500, 504; cf. *Williams* v. *Green Bay & W. R. R. Co.,* 326 U. S. 549.) Those considerations are present here in full measure.

Nor are the provisions of the Civil Practice Act authorizing declaratory judgments intended to change the limitations appropriate to controversies of this character. In *Westchester Mortgage Co.* v. *G. R. & I. R. R. Co.* (246 N. Y. 194, 199) this court, reading section 473 " in the light of established public policy ", condemned such intrusion into the policy of other States in this language (pp. 199–200, 202):

" The courts of this State may command only in matters where this State is sovereign. The powers of our courts do not extend beyond the territorial limits of the State, and our courts proceed with circumspection when they are called upon to give command even to a party whose person is subject to our own jurisdiction, if such command might possibly conflict with the sovereign power of another State. [pp. 199–200.]

" If the courts of one jurisdiction have the power to declare rights which can be made effective only by appeal to the courts of another sovereignty, it is a power which in the interests of comity must be sparingly exercised. [p. 202.] "

The defendants have not raised the point or objected on these grounds. But since the question is one of fundamental policy affecting the exercise of jurisdiction by our courts — even if not jurisdictional in the strict sense — I conceive that it may be raised on the court's own motion. (See *Weiss* v. *Routh*, 149 F. 2d 193, 195; cf. *Robinson* v. *Oceanic Steam Nav. Co.,* 112 N. Y. 315, 324; *Massachusetts Nat. Bank* v. *Shinn,* 163 N. Y. 360, 363.)

The judgment should be modified by directing judgment dismissing the complaint on the grounds stated herein.

LOUGHRAN, Ch. J., LEWIS, CONWAY, DESMOND and DYE, JJ., concur with THACHER, J.; FULD, J., dissents in opinion.

Judgments reversed, etc.