*96
 
 Bergan, J.
 

 On May 17,1968 petitioner Glekel and respondent Gluck entered into an agreement for the purchase and sale of 90,000 shares of common stock of A. S. Beck Shoe Corporation at $35 a share. Glekel was the purchaser and Gluck the seller. Gluck retained a substantial number of shares. The agreement provided that while he held not less than 40,000 shares, both parties would vote their shares together for a majority of the directors nominated by Glekel and for a minority nominated by Gluck.
 

 It was further agreed that if the directors designated by Glekel were elected and “if so requested ’ ’ by Gluck, Glekel “ shall use his best efforts to cause the Company to register ” under appropriate laws for the ‘1 sale or distribution ’ ’ of stock owned by Gluck. This was provided by subparagraph 7.d of the agreement. An arbitration provision was addressed particularly to this provision, i.e., any ‘ ‘ controversy or claim arising out of or relating to the provisions of subparagraph 7.d ”.
 

 On March 31, 1969 Gluck requested Glekel to cause the corporation to register 295,412 shares then owned by him for sale or distribution, and on Glekel’s behalf Gluck was advised by attorneys that the president of the company had reported to its executive committee it was for the best interests of the company to seek to market on its own account $10,000,000 of common stock and that underwriters had advised that this could be done only if there were no other registrations for selling shareholders at or about the same time.
 

 Glekel himself wrote Gluck a month later that he had ‘ ‘ not failed to satisfy my obligations ’ ’ under the agreement, but that he had ‘ ‘ requested the President of the company to take up the question of registration of your shares with underwriters ’ ’ and that this suggestion was not followed. Performance or nonperformance of the agreement would thus be a common kind of issue for arbitration. The question would be whether Glekel had performed the undertaking to “ use his best efforts” to bring about the registration, or not, and, if not, whether Gluck is entitled to damages. Glekel, however, resists arbitration on the ground the contract in this respect is illegal.
 

 The court at Special Term denied Glekel’s application as petitioner to stay arbitration on the ground of illegality in a memorandum which summarizes the problem.
 

 
 *97
 
 The court said: ‘ ‘ The only issues raised by petitioner relate to the interpretation of the agreement and the performance required thereunder, which necessarily must fall within the exclusive jurisdiction of the arbitrator under this arbitration clause (Matter of Exercycle Corp. [Maratta], 9 N Y 2d 329). Unless it can be said that performance is barred by statute as a matter of law (Matter of Kramer & Uchitelle [Eddington Fabrics Corp.], 288 N. Y. 467), arbitration may not be stayed.”
 

 The Appellate Division reversed by a divided court and granted a stay. The basis of decision is that since Glekel had become a director of the corporation after the agreement was executed, the effect of the agreement was that it precluded Glekel from exercising his judgment and discretion in the discharge of his duties and hence “ void as against public policy ”.
 

 It was noted, additionally, that Gluck had voted for the election of Glekel as director and that Glekel, in the office of director, was charged with “ undivided loyalty to the corporation ”.
 

 The leading New York case on the subject
 
 (Manson
 
 v.
 
 Curtis,
 
 223 N. Y. 313 [1918]), relied on by both sides, holds that an agreement between stockholders and officers to control and circumvent the normal powers of officers and directors is illegal and in violation of section 27 of the General Corporation Law (now Business Corporation Law, § 701), providing that the business of a corporation shall be managed by its board of directors (223 N. Y., p. 322).
 

 But the court carefully preserved the general freedom of stockholders to agree to control corporate policies. The opinion stated: “ It is not illegal or against public policy for two or more stockholders owning the majority of the shares of stock to unite upon a course of corporate policy or action, or upon the officers whom they will elect. An ordinary agreement, among a minority in number, but a majority in shares, for the purpose of obtaining control of the corporation by the election of particular persons as directors is not illegal. Shareholders have the right to combine their interests and voting powers to secure such control of the corporation and the adoption of and adhesion by it to a specific policy and course of business ” (223 N. Y., pp. 319-320).
 

 This reasoning is reflected in the opinion of Judge Fulo in
 
 Matter of Exercycle Corp.
 
 (Maratta) (9 N Y 2d 329, 335):
 
 “
 
 No
 
 *98
 
 statute or public policy, as reflected in a legislative act, is here involved to render the employment contract unenforcible and, absent one or the other, it has long been firmly established that arbitrators may disregard the strict and traditional rules of law.”
 

 The general principle on which illegality is based was reiterated in
 
 McQuade
 
 v.
 
 Stoneham
 
 (263 N. Y. 323) where the agreement between stockholders to control directors in the election of officers was found illegal, although it was noted by Judge Pound, on the basis of Justice Holmes’ opinion in
 
 Brightman
 
 v.
 
 Bates
 
 (175 Mass. 105, 111), that stockholders may “ combine to elect directors ” (263 N. Y., p. 329).
 

 The decision in
 
 Long Park, Inc.
 
 v.
 
 Trenton-New Brunswick Theatres Co.
 
 (297 N. Y. 174) is in the same direction. There an agreement by stockholders vesting management beyond control of the directors was held invalid. This line of cases has in common the circumstance that the stockholders had agreed to interfere directly with the normal freedom of management of the corporation by its directors and officers.
 

 The clause here in dispute, however, does not require Grlekel to interfere with the directors, to elect officers or to do any act of interference with corporate management. He agrees, if the directors designated by him are elected, that he
 
 “
 
 shall use his best efforts ” to cause the company to register the stock. This seems to be a perfectly proper arrangement between two stockholders.
 

 Indeed, it was on Grlekel’s own interpretation of his obligation that he had actually tried to do this and failed because the president and board of directors felt the best interest of the corporation was not to agree to appellant’s registration request, i.e., “ I requested the President of the company to take up the question of registration of your shares ”. If the arbitrators found this was using “ his best efforts ” they would find in his favor. This is very different from agreements to intermeddle with corporate management in violation of statute.
 

 Even if the purported illegality were more clearly manifest, and it were fairly arguable whether this was in fact an interference with the lawful directors and officers, the issue of illegality would be for the arbitrators
 
 (Matter of National Equip.
 
 
 *99
 

 Rental [American Pecco Gorp.],
 
 28 N Y 2d 639;
 
 Matter of Goodman [Lasrus],
 
 15 A D 2d 530).
 

 The agreement conld not possibly be deemed illegal because Grlekel later became a director and thereupon came to regard his contract as an interference with his independent duty. If he is right in this theory, then his acceptance of a directorship which frustrated the undertaking by him could itself be deemed a breach. Appellant seems right in concluding:
 
 “
 
 What the respondent is arguing is that by his own act of designating himself as a director he made illegal an agreement otherwise fully legal ’ ’.
 

 The order should be reversed, with costs, and the order at Special Term reinstated.
 

 Chief Judge Fuld and Judges Burke, Scileppi, Breitel and Gibson concur with Judge Bergan ; Judge Jasen dissents and votes to affirm on the opinion at the Appellate Division.
 

 Order reversed, etc.