OPINION OF THE COURT
Jones, J.
That an agreement between corporate shareholders includes illegal provisions with respect to the election of corporate officers and the fixation of their compensation does not preclude enforcement of the provision for a stock purchase option contained in the same agreement where it has been found that over the seven-year life of their agreement there was in fact no intrusion on the unfettered management of corporate affairs by the board of directors because the parties ignored and made no attempt to enforce the illegal portions of their agreement and there the evidence does not show that the parties themselves considered that enforcement of the stock purchase option was contingent on observance of the illegal portions of the agreement.
*308 After a trial without a jury the court granted respondent specific performance of the stock purchase option. A majority at the Appellate Division agreed, and we now affirm. The pertinent facts are recited in the dissenting opinion.
The appellant executor presses one question of law to which no reference was made by either the majority or the dissenters at the Appellate Division; he urges that the agreement of March 19, 1963 was illegal and is thus unenforceable. This contention was advanced on a motion to dismiss the complaint on the ground of illegality, made on the eve of trial and summarily denied by the court at the opening of trial. Although the contention was not expressly addressed at the Appellate Division it must be deemed to have been implicitly rejected in that court as well.
Appellant contends that because the March 19, 1963 agreement was not executed or approved by all of the corporate shareholders, its provisions requiring the election of respondent and his father as officers and fixing their compensation constituted an impermissible restriction of the rights and obligations of the board of directors to manage the business of the corporation under the doctrine of Manson v Curtis (223 NY 313) and related cases (see 3 White, New York Corporations [13th ed], par 620.03, subd [2]).[1] No argument is made that the stock purchase option, standing alone would be invalid; the assertion is that the agreement must be read as a whole and that it must be invalidated in its entirety. The critical issue is whether, because of the initial inclusion of provisions which could have been said to fetter the authority of the board to select corporate officers and to fix their compensation, the stock purchase provision is now unenforceable.
The uncontroverted evidence is that in the years following the signing of the agreement, the assertedly illegal provisions of the agreement were ignored; no attempt was made to observe or enforce them and the management of corporate affairs was in no way restricted in consequence of the 1963 agreement. The evil to which the cited rule of law is addressed was never sought to be achieved nor was it realized. Although Triggs, Sr., and Ransford continued to serve as directors, the record discloses there were also three or four other, indepen *309 dent directors. That Triggs, Sr., continued to be elected chairman of the board (he was also elected corporate treasurer) and Ransford, corporate president and that for several years their salaries were fixed by the board at the figures stated in the March 19, 1963 agreement was in consequence of action freely taken by the entire board of directors and cannot be attributed to the sanction of the March 19, 1963 agreement of which the other directors, constituting a majority of the board, were wholly unaware. Indeed Triggs, Sr., took no exception when, on May 11, 1965, the board reduced his salary from $20,000 (the agreement figure) to $10,800, and when the board later entirely eliminated his salary his complaint in April of 1969 was predicated on the departure from the board’s action of May 11, 1965 rather than on any asserted violation of the provisions of the March 19,1963 agreement.
The legal issue here, too, depends on what is now an affirmed factual determination. The claim of illegality, raised for the first time some 13 years after the agreement had been signed, must fail because, as the trial court concluded, the March 19, 1963 agreement "did not in any way sufficiently stultify the Board of Directors in the operations of this business” within the doctrine on which appellant would rely.
Analytically we are presented with an agreement which in a single document deals with two different sets of obligations. On the one hand, the agreement contains the stock purchase option exercisable on the death of the father as to which, standing alone, there is no claim of illegality. On the other, there are the provisions with respect to the election of corporate officers and the fixation of their salaries, which are of questionable legality. Any illegality exists, however, only to the extent that the agreement operated to restrict the freedom of the board of directors to manage corporate affairs. There was nothing illegal per se in the election of Triggs, Sr., as chairman of the board or his son Ransford as corporate president or in fixing their annual salaries at $20,000 and $18,000, respectively. There would have been illegality only if the election of those officers or the determination of their compensation had been in consequence of the prior agreement and thus in constraint of the freedom of the board of directors to exercise their responsibilities of management. The finding below, however, was that there had been no such stultification. In that circumstance, the fact that the second portion of the 1963 agreement, if it had been enforced, might have *310 involved illegality provides no compulsion not to enforce the other, legal portion of the agreement where, as here, there has been no factual determination that enforcement of the stock purchase option was dependent on enforcement of the terms with respect to corporate management. The fact is that the courts below have enforced only the stock option provisions of the March 19, 1963 agreement.[2]
As to the other issue, on which there was a division at the Appellate Division, there must be an affirmance. Whether the option granted respondent in the agreement dated March 19, 1963 to purchase the shares in Triggs Color Printing Corporation owned by his father on the latter’s death survived the execution and subsequent cancellation of the agreement with the corporation for repurchase by the latter of the stock depended on the intention of the parties, father and son, as manifested in their agreement and by their subsequent conduct in its performance. Consistent with the trial court’s finding that the stock purchase option did survive is its additional conclusion that when the corporation was experiencing economic difficulty, respondent loaned it $43,000 in the belief "that the operation and control of the business was and would remain in his hands pursuant to the terms of his contract with his father”. The issue of survival, an issue of fact or at least a mixed issue of fact and law, having been determined in favor of respondent in the trial court and then affirmed at the Appellate Division, is now beyond the scope of our review.
Accordingly, the order of the Appellate Division should be affirmed, with costs.

. The Business Corporation Law did not become effective until September 1, 1963, and accordingly its provisions, e.g., section 620, are not applicable to the March 19, 1963 agreement.

. That on the cross claim the trial court granted judgment in favor of the father’s estate for some $16,200 for back salary cannot accurately be said to have been in enforcement of the provisions of the March 19, 1963 agreement. The judgment was against the corporation, which was not a part to or in any way obligated under the terms of that agreement, and was not against Ransford Triggs, the only party to the agreement other than his father. Additionally the amount of the judgment was computed on the basis of the $10,800 annual salary set in the corporate resolution of May 11, 1965 and not on the $20,000 figure in the March 19, 1963 agreement.