Gabrielli, J.
(dissenting in part). I agree with the majority’s conclusion that plaintiff’s cause of action concerning the formation of two subsidiary corporations must be dismissed.* Plaintiff agreed unconditionally to the creation of these subsidiaries and therefore has no basis for complaining that this corporate activity was undertaken without his consent. Because I conclude that the agreement requiring plaintiff’s consent was invalid under well-established public policies, however, I deem it unnecessary to consider whether plaintiff’s unconditional consent was actually obtained. Instead, I would hold that plaintiff’s consent was not required as a condition precedent to the creation of the subsidiaries, since the agreement from which his right to consent is derived is an illegal attempt by shareholders to deprive the board of directors of its inherent authority to exercise its discretion in managing the affairs of the corporation. But, for the same reason, and contrary to the majority’s holding, I would reverse the deter *108 mination of the Appellate Division with respect to plaintiffs first cause of action and hold that plaintiff cannot maintain a suit based upon defendants’ failure to obtain his consent prior to executing the disputed interest and escrow agreements.
It is beyond dispute that shareholder agreements such as the one relied upon by plaintiff in this case are, as a general rule, void as against public policy. Section 3.01 of the agreement, as interpreted both by plaintiff and by a majority of this court, would have precluded the board of directors of Group from taking any action on behalf of the corporation without first obtaining plaintiff’s consent. This contractual provision, if enforced, would effectively shift the authority to manage every aspect of corporate affairs from the board to plaintiff, a minority shareholder who has no fiduciary obligations with respect to either the corporation or its other shareholders. As such, the provision represents a blatant effort to "sterilize” the board of directors in contravention of the statutory and decisional law of both Delaware and New York.
Under the statutes of Delaware, the State in which Group was incorporated, the authority to manage the affairs of a corporation is vested solely in its board of directors (Del General Corporation Law, § 141, subd [a]). The same is true under the applicable New York statutes (Business Corporation Law, § 701). Signficantly, in both States, the courts have declined to give effect to agreements which purport to vary the statutory rule by transferring effective control of the corporation to a third party other than the board of directors (see Abercrombie v Davies, 35 Del Ch 599, 604-611, revd on other grounds 36 Del Ch 371; Adams v Clearance Corp., 35 Del Ch 459, 464-466; Long Park, Inc. v Trenton-New Brunswick Theatres Co., 297 NY 174, 178-179; McQuade v Stoneham, 263 NY 323; Manson v Curtis, 223 NY 313, 323; Matter of Abbey [Meyerson], 274 App Div 389, affd 299 NY 557; cf. Matter of Farm Inds., 41 Del Ch 379, 390; Triggs v Triggs, 46 NY2d 305; Matter of Glekel [Gluck], 30 NY2d 93; see, also, University Computing Co. v Lykes-Youngstown Corp., 504 F2d 518, 532 [applying Delaware law]; see, generally, Delaney, The Corporate Director: Can His Hands Be Tied in Advance, 50 Col L Rev 52, 54-57). The common-law rule in Delaware was aptly stated in Abercrombie v Davies (35 Del Ch, at p 611, supra): "So long as the corporate form is used as presently provided by our statutes this Court cannot give legal sanction to agreements which have the effect of removing from directors *109 in a very substantial way their duty to use their own best judgment on management matters”.
True, the common-law rule has been modified somewhat in recent years to account for the business needs of the so-called "close corporation”. The courts of our State, for example, have been willing to enforce shareholder agreements where the incursion on the board’s authority was insubstantial (Clark v Dodge, 269 NY 410) or where the illegal provisions were severable from the otherwise legal provisions which the shareholder sought to enforce (Triggs v Triggs, 46 NY2d 305, supra). Neither the courts of our State nor the courts of Delaware, however, have gone so far as to hold that an agreement among shareholders such as the agreement in this case, which purported to "sterilize” the board of directors by completely depriving it of its discretionary authority, can be regarded as legal and enforceable. To the contrary, the common-law rule applicable to both closely and publicly held corporations continues to treat agreements to deprive the board of directors of substantial authority as contrary to public policy.
Indeed, there heretofore has been little need for the courts to modify the general common-law rule against "sterilizing” boards of directors to accommodate the needs of closely held corporations. This is because the Legislatures of many States, including New York and Delaware, have enacted laws which enable the shareholders of closely held corporations to restrict the powers of the board of directors if they comply with certain statutory prerequisites (Del General Corporation Law, §§ 350, 351; Business Corporation Law, § 620, subd [b]). The majority apparently construes these statutes as indications that the public policies of the enacting States no longer proscribe the type of agreement at issue here in cases involving closely held corporations. Hence, the majority concludes that there is no bar to the enforcement of the shareholder agreement in this case, even though the statutory requirements for close corporations were not fulfilled. I cannot agree.
Under Delaware law, as the majority notes, the shareholders of a close corporation are free to enter into private, binding agreements among themselves to restrict the powers of their board of directors (Del General Corporation Law, § 350). The same appears to be true under the present New York statutes (Business Corporation Law, § 620, subd [b]). Both the Delaware and the New York statutory schemes, however, *110 contemplate that such variations from the corporate norm will be recorded on the face of the certificate of incorporation (Del General Corporation Law, § 351; Business Corporation Law, § 620, subd [b]). New York additionally requires that the existence of a substantial restriction on the powers of the board "shall be noted conspicuously on the face or back of every certificate for shares issued by [the] corporation” (Business Corporation Law, § 620, subd [g]). Significantly, in both Delaware and New York, a provision in the certificate of incorporation restricting the discretion of the board has the effect of shifting liability for any mismanagement from the directors to the managing shareholders (Del General Corporation Law, § 351, subds [2]-[3]; Business Corporation Law, § 620, subd [f]).
In my view, these statutory provisions are not merely directory, but rather are evidence of a clear legislative intention to permit deviations from the statutory norms for corporations only under controlled conditions. In enacting these statutes, which are tailored for "close corporations”, the Legislatures of Delaware and New York were apparently attempting to accommodate the needs of those who wished to take advantage of the limited liability inherent in the corporate format, but who also wished to retain the internal management structure of a partnership (see, generally, 1 O’Neal, Close Corporations, § 5.02). At the same time, however, the Legislatures were obviously mindful of the danger to the public that exists whenever shareholders privately agree among themselves to shift control of corporate management from independent directors to the shareholders, who are not necessarily bound by the fiduciary obligations imposed upon the board. In order to protect potential purchasers of shares and perhaps even potential creditors of the corporation, the Legislatures of Delaware and New York imposed specific strictures upon incorporated businesses managed by shareholders, the most significant of which is the requirement that restrictions on the statutory powers of the board of directors be evidenced in the certificate of incorporation. This requirement is an essential component of the statutory scheme because it ensures that potential purchasers of an interest in the corporation will have at least record notice that the corporation is being managed in an unorthodox fashion. Absent an appropriate notice provision in the certificate, there can be no assurance that an unsuspecting purchaser, not privy *111 to the private shareholder agreement, will not be drawn into an investment that he might otherwise choose to avoid.
Since I regard the statutory requirements discussed above as essentially prophylactic in nature, I cannot subscribe to the notion that the agreement in this case should be enforced merely because there has been no showing that the interests of innocent third parties have actually been impaired. As is apparent from the design of the relevant statutes, the public policies of our own State as well as those of the State of Delaware remain opposed to shareholder agreements to "sterilize” the board of directors unless notice of the agreement is provided in the certificate of incorporation. Where such notice is provided, the public policy objections to the agreement are effectively eliminated and there is no further reason to preclude enforcement (see Lehrman v Cohen, 43 Del Ch 222, 235). On the other hand, where, as here, the shareholders have entered into a private agreement to "sterilize” the board of directors and have failed to comply with the simple statutory prerequisites for "close corporations”, the agreement must be deemed void and unenforceable in light of the inherent potential for fraud against the public. Indeed, since it is this very potential for public harm which renders these agreements unlawful, the mere fortuity that no one was actually harmed, if that be the case, cannot be the controlling factor in determining whether the agreement is legally enforceable. For the same reason, the illegality in the instant agreement cannot be cured retroactively, as the majority suggests, by requiring defendants to file the appropriate amendments to the certificate of incorporation. And, of course, it is elementary that a party to an agreement cannot be estopped from asserting its invalidity when the agreement is prohibited by law or is contrary to public policy (e.g., Brick v Campbell, 122 NY 337).
By its holding today, the majority has, in effect, rendered inoperative both the language and the underlying purpose of the relevant Delaware and New York statutes governing "close corporations”. According to the majority’s reasoning, the only requirements for upholding an otherwise unlawful shareholder agreement which concededly deprives the directors of all discretionary authority are that all of the shareholders concur in the agreement and that no "intervening rights of third persons” exist at the time enforcement of the agreement is sought. The statutes in question also recognize these factors as conditions precedent to the enforcement of *112 shareholder agreements to "sterilize” a corporate board of directors (Del General Corporation Law, § 351; Business Corporation Law, § 620, subd [b], pars [l]-[2]; subd [g]). But the laws of both jurisdictions go further, requiring in each case that the "close corporation” give notice of its unorthodox management structure through its filed certificate of incorporation. The obvious purpose of such a requirement is to prevent harm to the public before it occurs. If, as the majority’s holding suggests, this requirement of notice to the public through the certificate of incorporation is without legal effect unless and until a third party’s interests have actually been impaired, then the prophylactic purposes of the statutes governing "close corporations” would effectively be defeated. It is this aspect of the majority’s ruling that I find most difficult to accept.
For all of the foregoing reasons, I must respectfully dissent and cast my vote to modify the order of the Appellate Division by directing dismissal of plaintiff’s first cause of action.
Judges Jasen, Jones and Fuchsberg concur with Judge Meyer; Judge Gabrielli dissents in part and votes to modify in a separate opinion in which Chief Judge Cooke and Judge Wachtler concur.
Order modified, with costs to plaintiffs, in accordance with the opinion herein and, as so modified, affirmed.

 Since their interests and rights are identical in the present appeal, plaintiffs Zion and Gross will be referred to in the singular as "plaintiff” for the sake of convenience.