*887 OPINION OF THE COURT
Memorandum.
The order of the Appellate Division should be affirmed, with costs.
The Agosta brothers, John and Salvatore, each owned 50% of the capital stock of Fontana D’Oro Foods, Inc., a corporation engaged in the wholesaling and warehousing of foodstuffs and condiments used by pizzerias. As a consequence of disagreements between them, in the fall of 1982 John commenced a proceeding pursuant to Business Corporation Law § 1104 to dissolve Fontana. The proceeding was settled by a stipulation between John and Salvatore, entered on the record in open court on November 24 and modified on December 13, 1982, by which John agreed to purchase the stock owned by Salvatore for $505,000. The stipulation for the most part related to arrangements for payment of the purchase price and security for a five-year promissory note John was to sign, and included as well provisions concerning certain minor corporate assets and personal and real property, unrelated to Fontana, owned by the Agostas individually. Salvatore agreed to “wind down” his Fontana affairs and not to “interfere” with the business during that period. He also agreed to resign as an officer, director and employee of Fontana, the resignation to be held in escrow until closing, scheduled for December 31, 1982.
On December 29, John requested that the closing be postponed until the following week. Early in the morning of January 3, 1983, however, the Fontana warehouse, a major asset of the corporation, was destroyed by fire. No provision for this risk had been made in the stipulation. Fontana’s insurance carrier refused to pay under its policy, based on its arson investigation. John, who had before the fire formed La Famosa Foods, Inc., refused to proceed with the closing, claiming impossibility of performance.
Salvatore immediately moved to enforce the stipulation. Supreme Court denied the motion, holding that the true purpose of the transaction — which it determined to be the sale of an ongoing business enterprise — had been frustrated by the destruction of the warehouse and unforeseeable refusal of the insurer to compensate Fontana for the loss. The Appellate Division disagreed, directing Supreme Court to execute as John’s nominee the documents necessary to consummate the purchase of Salvatore’s interest in Fontana. The Appellate Division relied upon statutory provisions imposing the risk of loss on the purchaser of real property “[w]hen either the legal title or *888 the possession of the subject matter of the contract has been transferred” to him (General Obligations Law § 5-1311 [1] [b]) and on the buyer of accepted goods, “acceptance” being defined as the doing of “any act inconsistent with the seller’s ownership” (Uniform Commercial Code § 2-709 [1] [a]; § 2-606 [1] [c]).
While the Appellate Division properly directed specific performance, both lower courts erroneously disregarded the form of the transaction — which was a stock transfer — and treated the transaction instead as a sale of a business or tangible assets. The well-settled rule is that “ownership of capital stock is by no means identical with or equivalent to ownership of corporate property” (Brock v Poor, 216 NY 387, 401). We recently reaffirmed this rule in 5303 Realty Corp. v O & Y Equity Corp. (64 NY2d 313), in which we held that a notice of pendency was unavailable to a plaintiff in an action for specific performance of a contract to sell 100% of the stock in a corporation whose sole asset was an office building. Here, too, we cannot disregard the fact that the parties chose to structure their transaction as one involving stock, or that John agreed to pay $505,000 for Salvatore’s stock. Given the form of their transaction, whether the parties might really have intended to transfer control of an ongoing business enterprise, rather than stock, can have no bearing on this conclusion (cf. Landreth Timber Co. v Landreth, 471 US 105 S Ct 2297, 2306-2308; Gould v Ruefenacht, 471 US 105 S Ct 2308).
Since an agreement to convey stock in a close corporation may be enforced by specific performance (see, e.g., Triggs v Triggs, 61 AD2d 911, affd 46 NY2d 305; Matter of Galewitz, 3 AD2d 280, 286 [Breitel, J.], affd 5 NY2d 721; Aron v Gillman, 284 App Div 1065, mod on other grounds 309 NY 157), it was within the power of the Appellate Division to award such relief to Salvatore by directing Supreme Court to execute as nominee for John the various documents contemplated by the parties’ stipulation.
Chief Judge Wachtler and Judges Jasen, Meyer, Simons, Kaye, Alexander and Titone concur.
On review of submissions pursuant to section 500.4 of the Rules of the Court of Appeals (22 NYCRR 500.4), order affirmed, with costs, in a memorandum.