**Jesse PEARSON, Plaintiff/Appellant,**

v.

**Hugh E. HARDY, Power Tools, Inc. and National Drywall, Inc., Defendants/Appellees.**

Court of Appeals of Tennessee, Western Section, at Jackson.

Nov. 24, 1992.

Application for Permission to Appeal Denied by Supreme Court March 1, 1993.

James H. Kee, Johnson, Grusin, Kee & Surprise, P.C., Memphis, for plaintiff/appellant.

James L. Kirby and James R. Garts, Jr., Harris, Shelton, Dunlap & Cobb, Memphis, for defendants/appellees.

TOMLIN, Presiding Judge, Western Section.

Jesse Pearson ("plaintiff") filed suit in the Chancery Court of Shelby County against defendants Hugh Hardy ("Hardy"), Power Tools, Inc. ("Power Tools") and National Drywall, Inc. ("National Drywall") seeking to have that court enforce a stock redemption agreement. Defendants filed a

motion to dismiss for failure to state a claim; the trial court granted the motion. On appeal, the sole issue presented by the plaintiff is whether the trial court erred in granting defendants' motion to dismiss. We hold that this was error.

Under these circumstances, we take our facts from the amended complaint as true for the sake of this appeal. Power Tools was incorporated in April, 1967, with authority to issue 1,000 shares of no-par value stock. Hardy, along with John Pearson and W.J. Sproles, each subscribed to 333⅓ shares of its stock. Shortly thereafter, plaintiff was employed as manager of Power Tools, with the understanding that he would become an equal shareholder if the business progressed satisfactorily. The following year the charter of Power Tools was amended to increase the number of authorized shares to 1,500. At the same time Power Tools sold plaintiff 333⅓ shares of its stock for $2,500.

In March, 1968, Power Tools and its four stockholders entered into a Stock Redemption Agreement ("SRA" or "Agreement"). The first paragraph of the SRA provides as follows:

> In the event that any stockholder should desire to dispose of any of his stock in the Company during his lifetime, he shall offer to sell all of his stock for sale to the Company. The offer shall be based on a price determined in accordance with the provisions of Paragraph 5 hereof. Any share not purchased by the Company within sixty days after receipt of such offer shall be offered to the other stockholders, each of whom shall have the right to purchase such portion of the stock offered for sale as the number of shares owned by him at such date shall bear to the total number of shares owned by all the other stockholders provided, however, that if any stockholder does not purchase his full proportionate share of the stock, the unaccepted stock may be purchased by the other stockholders. If the offer is not accepted by the Company or the other stockholders within sixty days of receipt thereof, the stockholders desiring to sell his [sic] stock shall have the right to sell it to any other person

but shall not sell it without giving the Company and the remaining stockholders the right to purchase such stock at a price and on the terms offered by such other person.

In addition, the SRA provided that at that time the interest of each of the four shareholders in Power Tools had a value of $2500, which could be altered in accordance with the provisions of the SRA. The SRA further provided that the certificates of stock held by the stockholders were to be endorsed to the effect that the certificates were issued subject to the SRA. Plaintiff's certificate so provides. The Agreement stated that it was binding "upon the Company and the stockholders, their heirs, legal representatives, successors and assigns," that it could be altered or amended or terminated in writing by the signatures of the company and all the stockholders, or it would terminate either (a) upon the bankruptcy, receivership or dissolution of the company or (b) upon the death of two or more stockholders occurring simultaneously or within a period of thirty days.

In January, 1976, plaintiff resigned as a director and president of Power Tools and at the same time terminated his employment as its manager. Sometime in 1977, W.J. Sproles notified plaintiff that he was interested in disposing of his Power Tools stock. At that time, plaintiff advised Sproles he was not interested in purchasing the stock. Sproles thereafter transferred his shares in equal lots to Hardy and John Pearson, the other stockholder, plaintiff's brother. This transfer is not contested.

In May, 1988, John Pearson and Hardy transferred all of their shares of Power Tools to National Drywall, a corporation whose common stock was owned equally by Pearson and Hardy. Plaintiff was not given the opportunity to purchase any portion of the Hardy and John Pearson shares transferred to National Drywall in 1988. Plaintiff did not learn of these transactions until December, 1991.

In this action plaintiff has sued Hardy and Power Tools, alleging breach of the SRA by both defendants. In addition,

plaintiff seeks treble damages along with rescission of the transfer of shares to National Drywall, coupled with a decree granting him the opportunity to purchase all such shares wrongfully transferred.

In dismissing plaintiff's suit with prejudice, the Chancellor ruled as follows:

The Stock Redemption Agreement from which this action arises was executed on March 15, 1968. The Complaint alleges that the stock transfer allegedly made in violation of the Stock Redemption Agreement occurred on May 11, 1988 and more than twenty years from the execution of the Stock Redemption Agreement. It is not alleged nor shown that the Stock Redemption Agreement was renewed by and among the parties thereto.

The Stock Redemption Agreement is a shareholder agreement governed by the provisions of T.C.A. § 48–17–302 and specifically is subject to the limitations of § 48–17–302(c) that a shareholder agreement may not have a duration of more than twenty years unless it is renewed by all the parties thereto.

The Stock Redemption Agreement, having been executed more than twenty years prior to May 11, 1988 and not renewed by the parties thereto, expired and became unenforceable prior to the stock transfer here in question and this action should be dismissed with prejudice at plaintiff's cost.

T.C.A. § 48–17–302 reads as follows:

**48–17–302. Shareholders' agreements.**—(a) An agreement between two (2) or more shareholders, if in writing and signed by the parties thereto, may provide that, in exercising any voting rights, the shares held by them shall be voted as therein provided, or as they may agree, or as determined in accordance with a procedure agreed upon by them. Nothing in this subsection shall impair the right of the corporation to treat the shareholders of record as entitled to vote the shares standing in their names. A voting agreement created under this section is not subject to the provisions of § 48–17–301 and may be specifically enforced.

(b) No written agreement to which all or less than all the shareholders have actually assented, whether embodied in the charter or bylaws or in any agreement in writing signed by all the parties thereto, which agreement relates to any phase of the affairs of the corporation, whether to the management of its business or to the division of its profits or otherwise, shall be invalid as between the parties thereto on the ground that it is an attempt by the parties thereto to restrict the discretion of the board of directors in its management of the business of the corporation or to treat the corporation as if it were a partnership or to arrange their relationships in a manner that would be appropriate only between partners.

(c) The duration of any agreement permitted by subsection (a) or (b) shall not exceed twenty (20) years. Failure to state a period of duration or stating a period of duration in excess of twenty (20) years shall not invalidate the agreement, but in either such case the period of duration of the agreement shall be twenty (20) years. Any such agreement shall be renewable at any time before the expiration of such twenty (20) year period by agreement of all the shareholders bound thereby at the date of renewal.

(d) A transferee of shares in a corporation whose shareholders have entered into an agreement authorized by subsection (a) or (b) shall be bound by such agreement or any renewal of such agreement authorized by subsection (c) if he takes the shares with notice thereof. A transferee shall be deemed to have notice of any such agreement or any such renewal if the existence thereof is noted on the face or back of the certificate or certificates representing such shares.

(e) The effect of any agreement authorized by subsection (b) or any renewal thereof authorized by subsection (c) shall be to relieve the directors and impose upon the shareholders assenting thereto the liability for managerial acts or omissions that is imposed on directors by law,

to the extent that and so long as the discretion or powers of the board of directors, in its management of corporate affairs, are controlled by any such agreement.

■ The parties agree that the SRA is not a "voting agreement" as described in 48–17–302(a). Defendants' contend that inasmuch as the transfer of shares being challenged occurred more than twenty years after the date the SRA was signed, the SRA was inoperative under 48–17–302(b) and the transfer challenged by plaintiff was a valid one. It is plaintiff's contention that § 48–17–302(b) is not applicable to the types of agreements represented by the SRA.

T.C.A. § 48–17–302 was enacted in 1986 as part of the Business Corporations Act. Although not exactly the same, much of the language of 48–17–302(b) can be found in § 17.32 of the Model Act. The official comment to § 17.32 states that it was included in the Act to validate shareholder agreements that were previously being invalidated by courts on the basis that these agreements, by their terms, "sterilized" the board of directors of a corporation. *See Long Park v. Trenton–New Brunswick Theatres Co.*, 297 N.Y. 174, 77 N.E.2d 633 (1948).

Defendants contend that the words "or otherwise" contained in section 48–17–302(b) manifest an intent to define shareholder agreements to include virtually any written agreement between shareholders, such as the one in the case under consideration. We do not agree.

■ A principle of statutory consideration states that where general words follow specific words, which limit the scope of a statute, the general words would be construed as applying to things of the same kind or class as those indicated by the preceding special words. *Nance by Nance v. Westside Hospital*, 750 S.W.2d 740, 743 (Tenn.1988). Here the phrase "or otherwise" is preceded by the specific phrase "which agreement relates to any phase of the affairs of the corporation." In our opinion, 302(b) is directed at those agreements that in any way relate to the affairs of the corporation or which attempt to change the management of corporate affairs in a method or manner not contemplated by the Corporations Act.

■ In seeking to ascertain legislative intent, a statute should be read as a whole, not in parts. *James Cable Partners v. Jamestown*, 818 S.W.2d 338, 342 (Tenn. App.1991). A statute's meaning is to be determined not from special words in a single sentence or section, but from the act taken as a whole, viewing the legislation in light of its general purpose. *Loftin v. Langsdon*, 813 S.W.2d 475, 478 (Tenn.App. 1991). The last subsection of 48–17–302, Subsection (e), states that "[t]he effect of any agreement authorized by Subsection (b) ... shall be to relieve the directors and impose upon the shareholders assenting thereto the liability for managerial acts or omissions that is imposed on directors by law...." The SRA under consideration in this case in no way attempts either of those objectives, and is totally foreign thereto. It deals solely with the rights of the stockholders and corporation to purchase stock of the stockholders if and when it is offered for sale.

There is yet another reason why the twenty year limitation found in 302(c) is not applicable to the SRA here under consideration. Subsection (c) states in part, "The duration of any agreement *permitted* by Subsection (a) or (b) shall not exceed twenty (20) years." (Emphasis added.) The SRA is permitted not by 48–17–302(b), but by T.C.A. § 48–16–208, which specifically deals with shareholder agreements that restrict the transfer of shares.

Accordingly, for the above-stated reasons, the decree of the trial court dismissing plaintiff's complaint is reversed. This cause is remanded to the trial court for further proceedings not inconsistent with this opinion. Costs in this cause on appeal are taxed to the defendants, for which execution may issue if necessary.

CRAWFORD and FARMER, JJ., concur.